**MILLWRIGHTS LOCAL UNION NO. 2484 and Carpenters District Council of the Sabine Area, Appellants,**

v.

**The RUST ENGINEERING CO., Appellee.**

No. 6972.

Court of Civil Appeals of Texas.

Beaumont.

Dec. 7, 1967.

Rehearing Denied Jan. 9, 1968.

Stephenson, Thompson & Morris, Orange, for appellants.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee; Tommy Duke, Houston, of counsel.

PARKER, Justice.

This is an appeal from a temporary injunction obtained by The Rust Engineering Co., as petitioner, against the defendants, Carpenters District Council of the Sabine Area and Vicinity and Millwrights Local Union No. 2484. Such judgment and order provide:

"It is also ORDERED, ADJUDGED AND DECREED that the Defendants, Carpenters District Council of the Sabine Area and Vicinity and Millwrights Local Union No. 2484, their officers, agents, members, representatives, servants, employees and those persons in active concert or participation with them be temporarily enjoined from, and that they shall desist from establishng and/or maintaining any picket or picket line at or adjacent to the entrances of The Rust Engineering Construction project located near Orange, Orange County, Texas, so long as an object and/or effect of such picket and/or picket line is to directly or indirectly to secure the disregard, breach or violation of valid subsisting collective bargaining 'agreements between the Plaintiff and/or its subcontractors and the representatives of their employees in violation of Section 4 of Article 5154d of the Revised Civil Statures [sic] of the State of Texas."

The plaintiff will be referred to as "Rust" and the respective defendants will be referred to as "Carpenters Union" and "Millwrights Union."

First, we will consider the temporary injunction granted as against Carpenters Union. The trial court granted a temporary restraining order against both unions on November 3, 1967. This was a Friday. On Friday, November 3, 1967, the Honorable Ward Stephenson, attorney for Millwrights Union, requested the court to accelerate the hearing on the temporary injunction to Monday, November 6. This was done by the court. At the time of the hearing on temporary injunction, the trial court had no jurisdiction of Carpenters Union for the reasons hereinafter set forth.

RULE 681: *Temporary Injunctions: Notice*

No temporary injunction shall be issued without notice to the adverse party.

RULE 124: *No Judgment Without Service*

In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant, as prescribed in these rules, except where otherwise expressly provided by law or these rules.

■ The Carpenters Union was not served with citation, did not accept or waive process or make an appearance by any pleadings as prescribed in the Texas Rules of Civil Procedure. D. H. Sartain, Jr. was served with citation together with a copy of plaintiff's verified petition. He was a member of the Carpenters District Council, a delegate to the District Council and such Council, upon his request, authorized him to establish the pickets in question. He was not an officer in Carpenters Union. There is a bystander's affidavit stating that Mr. A. B. Wheeler, David Sumrall and Mr. Sartain were present in the courtroom at the time the hearing was had. Wheeler was President of the Carpenters Union. Nevertheless, it cannot be said that the Carpenters Union is bound by the judgment of temporary injunction. The Carpenters Union was interested in the result of this litigation, but did not actively participate in the hearing or control the proceedings by anything in the record. There is no conclusive evidence to authorize this court to hold the trial court had acquired jurisdiction of the Carpenters Union under the principle set forth in American Indemnity Co. v. Fellbaum, 114 Tex. 127, 263 S.W. 908, 910, 37 A.L.R. 633, and Bragdon v. Wright, Tex.Civ.App., 142 S. W.2d 703. For this reason the judgment of temporary injunction against the Car-

penters Union is reversed and remanded. The Carpenters Union gave notice of appeal and filed its appeal bond in the trial court. Under Rule 123 T.R.C.P., the Carpenters Union shall be presumed to have entered its appearance to the term of the trial court in which the mandate of this court shall be filed.

█ The foregoing disposes of Carpenters Union. The remainder of this opinion is limited to the temporary injunction against Millwrights Union.

Rule 385(d) provides:

Where the appeal is from an order granting or refusing a temporary injunction * * * the cause may be heard in the Court of Civil Appeals * * * on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below. * * *

In this suit, plaintiff filed its petition verified by affidavit and containing a plain and intelligible statement of the grounds for relief, complying with Rule 682 T.R.C.P. Such petition is not only a pleading but is an affidavit to be considered by the trial court on the application of Rust for temporary injunction. The word "affidavit" means the same thing in Rule 385(d) as it does in Rule 682.

█ On this appeal, this court recognizes the principles clearly stated by the Supreme Court of Texas in Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517, on page 519 (1961) as follows:

The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending a final trial of the case on its merits. James v. E. Weinstein & Sons, Tex.Com.App., 12 S.W.2d 959, 960. A trial judge therefore has broad discretion to grant or to deny a writ when the pleadings and the evidence show a probable right of recovery in the applicant and a probable injury to him if the writ is not granted. Transport Co. of Texas v. Robertson Trans-

ports, [Inc.,] 152 Tex. 551, 261 S.W.2d 549. A necessary corollary of that rule is that a trial judge abuses his discretion if he grants a writ when the evidence fails to furnish any reasonable basis for concluding that the applicant has a probable right of recovery. To furnish a reasonable basis for the conclusion the evidence need not establish that the applicant will finally prevail in the litigation, Transport Co. of Texas v. Robertson Transports, [Inc.,] supra, but it must, at the very least, tend to support a right of recovery. Southwestern Greyhound Lines, Inc. v. Railroad Commission, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R. 1235.

Rust's original petition is verified and in affidavit form containing allegations as follows:

"II.

"The United Brotherhood of Carpenters & Joiners of America, AFL–CIO, Millwrights Local Union No. 2484, and Carpenters District Council of the Sabine Area and Vicinity are affiliated labor organizations and unincorporated associations and have their duly authorized agents and representatives engaged in representing and acting for and on behalf of employee members in Orange County, Texas and vicinity, and are the exclusive bargaining representatives of all employees employed by the Plaintiff in Orange County, Texas and vicinity, engaged in any work over which the jurisdiction of the Defendants, United Brotherhood of Carpenters & Joiners of America, AFL–CIO and Millwrights Local Union No. 2484 is recognized by the Building and Construction Trades Department of the AFL–CIO.

"III.

"At all times material hereto, Rust Engineering Company has been engaged in the construction of a paper mill near Orange, Texas, pursuant to a contract with the Owens-Illinois Company. In

pursuance of the obligations of Rust Engineering Company, it has entered into various agreements of subcontract with other corporations and organizations to perform certain portions of the construction work for the Owens-Illinois Paper Mill.

"IV.

"In pursuance of the contract between Rust Engineering Company and the Owens-Illinois Company, the Plaintiff and its subcontractors have employed approximately thirteen hundred (1,300) craftsmen represented by various labor organizations including the Defendants herein.

"V.

"Rust Engineering Company, on or about June 24, 1960, entered into a collective bargaining agreement with the International Brotherhood of Carpenters & Joiners of America, AFL–CIO, such contract which according to its provisions has been renewed from year to year and is currently in effect and is binding upon all Defendants named herein. The aforesaid collective bargaining agreement has been and will continue to be and remain in full force and effect under its terms.

"VI.

"Among other things, the aforesaid collective bargaining agreement provides as follows:

'The Employer agrees that there will be no lock-out and the Union agrees that there will be no stoppage of work or any strike of its members either collectively or individually until said dispute or misunderstanding has been referred to the International Office of the Union and the Home Office Representative of the Employer.'

"VII.

"For approximately one year Plaintiff has been a dues paying Specialty Member of the Constructors Association of the Sabine Area, hereinafter referred to as 'CASA'. At all times material hereto, Plaintiff has by virtue of its membership in said CASA, been subject to the provisions of that collective bargaining agreement between the Sabine Area Construction Committee of said CASA and the Carpenters District Council of the Sabine Area and Vicinity representing Millwrights Local Union No. 2484, Defendants herein, executed on or about May 5, 1967. Among other things, the aforesaid collective bargaining agreement provides as follows:

'There shall be no stoppage of work because of any proposed changes to this Agreement or any disputes over matters relating to this Agreement.'"

The foregoing allegations are undisputed. The collective bargaining agreement of May 5, 1967 was before the trial court. Also the collective bargaining agreement of June 24, 1967 was before the court. The allegations in Paragraph IV are undisputed. Rust further alleges in its verified petition:

"VIII.

"Since on or about 10:00 p. m. on Thursday, November 2, 1967, and continuing to date, Defendants United Brotherhood of Carpenters & Joiners of America, AFL–CIO; Carpenters District Council of the Sabine Area and Vicinity; and Millwrights Local Union No. 2484, acting singularly and in concert, deliberately, willfully and intentionally breached, conspired and combined to breach, and encouarged [sic], induced, obtained, ordered and permitted breaches of the aforesaid collective bargaining agreements by establishing pickets at the entrances to the Plaintiff's construction project for Owens-Illinois in violation of the aforesaid collective bargaining agreements. The aforesaid illegal actions by the Defendants, and each of them, continue and will continue unless restrained by this Court, thereby causing

immediate, substantial and irreparable injury, loss and damage to the Plaintiff. At all times material hereto, the Plaintiff has, and continues to, fully abide by and comply with all of the various obligations and responsibilities under the aforesaid collective bargaining agreements.

"IX.

"As a direct and proximate result of the aforesaid illegal actions by Defendants, United Brotherhood of Carpenters & Joiners of America, AFL-CIO; Carpenters District Council of the Sabine Area and Vicinity; and Millwrights Local Union No. 2484, on or about 10:00 p. m. on Thursday, November 2, 1967, and continuing to date, there has been a cessation of the construction on the said Owens-Illinois Paper Mill project by the employees of the Plaintiff and by the employees of other contractors working on the Owens-Illinois Paper Mill project.

"X.

"By such actions, the said Defendants have violated Article 5154d of the Revised Civil Statutes [sic] of the State of Texas in that they have formed an obstacle to the free ingress to and egress from the place of business of the Plaintiff and its subcontractors; and picketed for the purpose of and have induced persons and all other employees working at said construction site, including Plaintiff's subcontractors' employees not to enter the said premises in violation of the respective collective bargaining agreements pertaining to said persons, employees and subcontractors' employees."

Mr. Sartain testified the pickets were placed under authority of the District Council by him. The pickets are not placed without authority of the District Council. Pickets don't go up unless the District Council authorizes them. Signs were placed up. They were Millwrights signs with Mr. Sartain's name on them. After a temporary restraining order was issued and served upon Mr. Sartain at 4:00 p. m. on Friday afternoon, he consulted his attorney, Mr. Stephenson. Upon the advice of Mr. Stephenson, he removed three or four Millwrights at the plant, one of them on the picket line walking the picket, telling them to refrain from picketing and to stay back completely away from the picket line. Referring to Paragraphs IX and X of plaintiff's petition, it is plain that the purpose of the picketing was to cause their own union and other unions to violate their collective bargaining contracts and not pass the picket lines. The legislature of the State of Texas in Section 4, Article 5154d, V.A. C.S. declares this to be unlawful. This is a public policy of the State of Texas which is supplemented by other statutes and decisions of the Supreme Court of Texas. There is no evidence of any argument between unions or any argument between Rust and any union, or between subcontractors under Rust and any union.

In the Statement of Facts, Mr. Stephenson, as attorney for the Millwrights, stated to the court:

"Now, at the outset I should like to tell the Court on behalf of the Millwrights there is no dispute over the Agreement and there is no request that the Agreement be changed. *We have no dispute* which would come within this latter Contract and Agreement which I referred to, which incidentally was signed on the 4th day of May, 1967. (Emphasis ours)

"In this particular Agreement, which is the Local agreement, there is set out a schedule of wages to be paid, and it sets out that as of this time millwright journeyman receive $5.08 an hour, millwright foremen, $5.58, and millwright general foremen, $5.83; then it provides for certain percentages of increase.

"There has only been two pickets, properly picketing."

Rust, in its verified petition, further alleged:

"XI.

"The agreement between Rust Engineering Company and the Owens-Illinois Company requires the completion of all said construction by the Plaintiff not later than a certain date and the Owens-Illinois Company will incur substantial damage if the construction is not completed by that date. As a result of the cessation of work and construction of the said paper mill project directly and proximately caused by the aforesaid illegal actions by the Defendants, the Plaintiff anticipates and therefor alleges that unless the Defendants are immediately restrained by this Court it may reasonably anticipate that said construction will not be completed within the time as required by the contract between the Rust Engineering Company and the Owens-Illinois Company and that such illegal actions by the Defendants will therefore result in immediate, substantial and irreparable injury, loss and damage to the Plaintiff. D. H. Sartain, Jr. is an agent and representative of one of the Defendants and may be found for service at 213 S. Market Street, Orange, Texas.

"XII.

"The total value of the existing contract between The Rust Engineering Company and the Owens-Illinois Company is in excess of Fifty-Eight Million Dollars. If employees represented by the Defendants herein are not required to report and/or return to the construction project and Defendants, Carpenters District Council of Sabine Area and Vicinity and Millwrights Local Union No. 2484, are not required to remove this illegal picket, the entire construction will continue to be halted. Unless immediately enjoined by this Court, the aforesaid illegal actions by the Defendants will result in irreparable injury to the Plaintiff, the exact amount of which the Plaintiff is unable to ascertain, but damages in excess of Twelve Thousand Dollars ($12,-000.00) per day have resulted and will continue to result from a complete cessation of work on the Owens-Illinois Paper Mill project. Damages have resulted and will continue to occur before notice can be served upon the Defendants and a hearing held by this Court upon the Plaintiff's application for a temporary injunction.

"The Defendants are wholly unable to respond in damages of the magnitude involved in this case and accordingly, immediate, substantial and irreparable injury, loss and damage will result to the Plaintiff unless said illegal actions by the Defendants are immediately restrained and enjoined by this Court.

"XIII.

"For all of the foregoing reasons, the Plaintiff has no adequate remedy at law and requests restraint by this Court of the Defendants' illegal actions which are prejudicial to them. Under the principles of equity and the provisions of Article 5154d of the Revised Civil Statutues [sic] of the State of Texas, the Plaintiff is entitled to relief herein prayed for."

The allegations in Paragraphs XI, XII and XIII are not disputed. Millwrights Union has urged that the trial court had no jurisdiction to hear this matter according to the decision of the U. S. Supreme Court in Ex parte George, 371 U.S. 72, 83 S.Ct. 178, 9 L.Ed.2d 133 (1962). Reading this opinion, the opinion of the Supreme Court of Texas reported in 163 Tex. 103, 358 S.W.2d 590, it is clear that George was a member of the National Maritime Union of America, which union was engaged in a labor dispute with the American Oil Company. In the instant case, all parties agree that the collective bargaining agreement between Rust and Millwrights is valid and subsisting. Ex parte George is not applicable to the instant case.

The jurisdiction of the trial court to grant the temporary injunction has not been pre-empted by Federal law. In Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct.

267, 9 L.Ed.2d 246 (1962) it was held that since the suit was brought upon a collective bargaining agreement, the State Court had jurisdiction and action was not pre-empted by Federal law even though the act complained of constituted an unfair labor practice. The existence of this exception to the pre-emption doctrine was reiterated by the Supreme Court in Local 100, of United Ass'n of Journeymen and Apprentices v. Borden, 373 U.S. 690, 693, 83 S.Ct. 1423, 10 L.Ed.2d 638 (1963).

There was no violence in the picketing. There was no mass picketing. It was peaceful picketing but it loses its protection under the constitutional guaranty of free speech because one of its purposes was contrary to public policy. Public policy of Texas is expressed in Section 4 of Article 5154d V.A.T.S., other general laws of the State of Texas and authoritative decisions of courts of this State. In Hughes v. Superior Court of the State of California, etc., 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950), the Supreme Court unanimously upheld a state court order enjoining peaceful picketing against the contention that the injunction was invalid because it infringed the constitutional right of free speech. See also International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local 309 v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995 (1950).

■ Cain, Brogden & Cain, Inc. v. Local Union No. 47, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, 155 Tex. 304, 285 S.W.2d 942 (1956), involved a suit by a contractor for injunctive relief against picketing. The district court granted the injunction and the appellate court vacated the order. In reversing the ruling by the Court of Civil Appeals and reinstating the temporary injunction, the Texas Supreme Court indicated as follows:

"It is now well settled that peaceful picketing loses its protection under the constitutional guaranty of free speech if *one* of its purposes is contrary to public policy.

N.L.R.B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284. Moreover, it matters not whether the public policy violated be declared by the legislature * * * or by the courts, as it was in the Ritter's Cafe, the Hughes and the Hanke cases."

In the Cain case, Carpenters and Joiners Union etc. v. Ritter's Cafe, 149 S.W.2d 694 (Tex.Ct.Civ.App.1941) is approved. Also see Office Employees International Union Local No. 129 v. Houston Lighting & Power Co., 314 S.W.2d 315 (Tex.Ct.Civ. App.1958, writ ref., n. r. e.).

There is nothing in the record contrary to the allegations of Rust except hearsay evidence, or ambiguous uncertain testimony, indefinite as to who or what was actually involved.

In its finding of fact, the trial court found as a fact the statements of fact alleged in the verified petition of Rust. The conclusions of law of the trial court were:

1. This court has jurisdiction of the cause in question in the light of decisions of the Supreme Court of the United States and in particularly Smith v. Evening News Assn., 371 U.S. 238 [195], which rejected the holding of San Diego Building Trades Council v. Garmon, where the conduct of the Defendants is in breach of a valid collective bargaining contract, even though such conduct might be an unfair labor practice.

2. Defendants, Carpenters District Council of the sabine area and vicinity, and Millwrights Local Union No. 2484 were engaging in picketing which directly breached their collective bargaining agreement with the Plaintiff and were inducing the breach of collective bargaining agreements between other employers and the designated bargaining representatives of their employees in violation of Section 4 of Article 5154d of the Revised Civil Statutes of the State of Texas, and

the state court decisions interpreting such statute.

3. Plaintiff has fully abided by and complied with all of the various obligations and responsibilities under the collective bargaining agreements with the Defendants.

4. Since the Defendants did not deny by pleading or otherwise this specific and controlling allegations of the verified petition, especially those pertaining to the irreparable harm being incurred by the Plaintiff, I find that Plaintiff does not have an adequate remedy at law and would continue to incur such loss and damage unless the Plaintiff were granted the relief prayed for in its petition.

■ We agree with the trial court's conclusions of law. This court holds the pleadings and the evidence show a probable right of recovery in the applicant, Rust, and a possible injury to it if the temporary injunction had not been granted. No abuse of discretion on the part of the trial judge is shown by his granting the temporary injunction.

The judgment of the trial court granting a temporary injunction as against the Millwrights is affirmed. The temporary injunction against Carpenters Union is disposed of as hereinbefore set forth.

STEPHENSON, Justice (dissenting).

I respectfully dissent:

I have concluded that the law in this state is that peaceful picketing cannot be restrained unless such picketing is unlawful or against public policy. As it was said by the Supreme Court of Texas in Cain, Brogden & Cain, Inc. v. Local Union 47 etc., 155 Tex. 304, 285 S.W.2d 942: "No injunction which prohibits lawful picketing may stand; only unlawful picketing may be enjoined."

There is no evidence in this record to show any evidence or mass picketing.

There is no evidence in this record to show the picketing is against public policy such as the cases involving secondary boycotting or an attempt to force an employer to hire union labor. The only argument made that the picketing is unlawful is that it is in violation of Article 5154d, Sec. 4, V.A.C.S., which reads as follows:

It shall be unlawful for any person, singly or in concert with others, to engage in picketing, the purpose of which, directly or indirectly, is to secure the disregard, breach or violation of a valid subsisting labor agreement arrived at between an employer and the representatives designated or selected by the employees for the purpose of collective bargaining, or certified as the bargaining unit under the provisions of the National Labor Relations Act.

The only evidence of a dispute between the Millwrights and Rust Engineering Co. is that Rust had employed people other than Millwrights to do Millwright work. Even though it is suggested by counsel that this is a matter of sub-standard wages, I do not so construe it. In any event, there is no evidence that the "purpose" of this strike is to "secure the disregard, breach or violation of a valid subsisting labor agreement," even though the "effect" of the strike may result in such end. I do not think it was the intention of the legislature that Article 5154d, Sec. 4 have such meaning, as the word "purpose" must be given some significance. If this statute was intended to have the meaning suggested, then it would have been a simple matter to merely state that one union cannot picket as long as another union has a labor agreement with the same employer.

There are two contracts contained in the supplemental transcript which the trial judge says were tendered in evidence. The first contract is between The Rust Engineering Company and the United Brotherhood of Carpenters and Joiners of America. The second contract is between the Carpenters District Council of the Sabine

Area and Vicinity and Sabine Area Construction Committee. I find no evidence of a contract between Rust Engineering Company and the Millwrights, nor do I find evidence of a contract between Rust Engineering Company and any other labor union which picketing could affect.

I also have concluded that if there was a contract between the parties compelling arbitration of disputes, and a no-strike clause, that alone does not mean that the picketing was "unlawful" or "against public policy." The terms "breach of contract" and "unlawful" do not have the same meaning. It is not necessary for this court to pass upon the question of breach of contract as that question is not before us. Assuming there is a clear breach of the contract, it does not follow that injunction to restrain such breach would automatically follow. There is no evidence that petitioner does not have an adequate remedy at law for damages based upon a breach of contract. There being no evidence to support the action of the trial court, such judgment should be reversed and rendered and the injunction dissolved.

## ON MOTION FOR REHEARING

PARKER, Justice.

Lengthy oral argument was had upon Motion for Rehearing. Because of contentions urged thereon by Millwrights Union, the original opinion is clarified by (a) and (b) below:

(a) Where it is stated the respective defendants will be referred to as "Carpenters Union" and "Millwrights Union", we would make it plain that by "Carpenters Union" we are referring to Carpenters District Council of the Sabine Area and Vicinity.

(b) In Local 100 of United Association of Journeymen and Apprentices v. Borden, 373 U.S. 690, on page 693, 83 S.Ct. 1423, on page 1425, 10 L.Ed.2d 638, it is, by

footnote 3, that Smith v. Evening News Ass'n holding is reiterated and distinguished, to-wit:

3. 49 Stat. 452, as amended, 29 U.S.C. §§ 157, 158. We do not deal here with suits brought in state courts under § 301 or § 303 of the Labor Management Relations Act, 61 Stat. 156, 158, 29 U.S.C. §§ 185, 187, which are governed by federal law and to which different principles are applicable. See, e. g., Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

Referring to Rule 385, Section d, and Rule 682, T.R.C.P., discussed in the majority opinion, we would supplement this by the following:

In Vol. 6, Texas Practice, Lowe & Archer on page 363, Section 348, Hearing on Temporary Injunction, it is stated:

The hearing on application for temporary injunction may be on the pleadings alone, unless the material allegations of the complaint are denied under oath, in which case, proof of the allegations in the petition must be made. This proof may sometimes be made by supporting affidavits, but the trial court in its discretion may refuse to consider such affidavits and may require proof by testimony and evidence proffered in court as in other civil trials. The proof required to sustain the grant of a temporary injunction need not be conclusive as on final hearing, but is deemed sufficient if it reflects, prima facie, the existence of a probable right and a probable irreparable injury if the writ is not granted.

Cited thereunder is McAmis v. Gulf, C. & S. F. Ry. Co., 184 S.W. 331 (Tex.Civ. App.1916, writ ref.). On page 333, the court held:

Such verified allegations of fact on preliminary hearing, in the absence of an answer, affidavits, or oral testimony, controverting same, are sufficient basis

for the issuance of the writ. The rule is thus stated:

"Except on final hearing for a perpetual injunction the bill or complaint itself, when properly verified, may be used as an affidavit as to the facts properly stated therein, and frequently the bill alone, when so verified, may be a sufficient basis for the issuance of a temporary injunction if it contains allegations of fact sufficient, if taken as true (as they will be before answer), to authorize the issuance of an injunction. * * *" 22 Cyc. 942.

In Daniel v. Kittrell, 188 S.W.2d 871 (Tex.Civ.App.1944, writ ref'd w. o. m.), the court held as follows:

Although a temporary restraining order must be granted or denied upon the verified complaint of the complaining party alone, the application for an injunction, whether temporary or permanent, may be granted or denied upon the pleadings of both parties and upon such evidence, if any, as may be adduced upon the issues drawn by the pleadings.

Lee v. Howard Broadcasting Corporation (Tex.Ct.Civ.App.1957) 305 S.W.2d 629 (no writ hist.).

It is clear from the authorities and the rules that in hearings on applications for temporary injunction ex parte affidavits are admissible and that "a verified petition and a responsive sworn answer thereto are to be taken together *as evidence* on a hearing for a temporary injunction." 24-A Tex.Jur., Injunctions, Section 138, p. 228. Rule 385(d), Texas Rules of Civil Procedure. (Emphasis supplied.) We have no doubt of the right of a trial court under proper circumstances to decide fact issues on application for temporary injunction on the basis of sworn pleadings considered as affidavits—each case to stand on its own bottom. (Above emphasis is that of Chief Justice Gannon.)

The above case was cited by Justice Pope in Littlejohn v. Finder (Tex.Ct.Civ.App. 1961) 348 S.W.2d 237 (no writ hist.):

Littlejohn contends that the court erred in considering only the pleadings and affidavits and in not hearing evidence. See, Lee v. Howard Broadcasting Corporation, Tex.Civ.App., 305 S.W.2d 629.

The motion for rehearing herein states "that there was no evidence submitted, ambiguous or otherwise, so now [sic] could there have been anything contrary to the allegations of Rust?" Further, in the motion for rehearing, it is stated the trial court took away from them the right to be heard and that no chance was given to them to be heard. We do not agree with either contention. Mr. Sartain was on the stand. No question was asked him as to the reason for the picketing, only as to the picketing. He placed the pickets and withdrew them. It cannot be said that the trial court refused to hear evidence on the reason for the picketing. It was the responsibility of the parties to call witnesses and question them. Sartain of Millwrights Union was asked no question about any dispute.

Upon the hearing in the instant case, the attorney for Millwrights Union elected to take the initiative, dictated into the record an answer which the court authorized him to swear to and file. Most of the terms of the collective bargaining agreements were incorporated in his answer. As part of his answer he stated:

Now, at the outset I should like to tell the Court on behalf of the Millwrights there is no dispute over the Agreement and there is no request that the Agreement be changed. We have no dispute which would come within this latter Contract and Agreement which I referred to, which incidentally was signed on the 4th day of May, 1967. (Tr. 36, 2–9)

Counsel for Millwrights Union has asserted the collective bargaining contracts, appearing in full on this appeal in a sup-

plemental transcript, were not before the trial court. We disagree. We quote from the statement of facts:

On the second point as to the defense raised by Mr. Stephenson on behalf of the Union regarding wages, I have checked now with the Company, there has been no grievance filed, there has been no discussion concerning wages. We were without any knowledge of this whatsoever, but even in the face of that, even if there were such a dispute, the no-strike clause in this contract is very clear in that it indicates that there shall be no stoppage of work because of any proposed changes to this agreement of any disputes over matters relating to this agreement. Even if there is or possibly might be a wage dispute such as described by Mr. Stephenson on behalf of the Union, the Union was still in violation of this contract and in violation of Section 6 regarding the no-strike clause.

*THE COURT*: What is the grievance procedure under the contract, for my information?

*MR. DUKE*: Your Honor, I will give you a copy. I have several copies. (Tendering contract to the Court).

*THE COURT*: It has to do with hiring someone else to do the millwrights' work.

*MR. STEPHENSON*: No, sir, if they were paying the same wage, we would have no complaint.

 It is clear most terms of the collective bargaining agreement were agreed upon in the verified petition and verified answer. Full copies were before the court without objection. Millwrights Union in no manner challenged the statement that Rust never had knowledge of any demand by "Millwrights Union" and had no opportunity to negotiate before the picketing. Under such conditions, picketing was not justified. North East Texas Motor Lines, Inc. v. Dickson et al. (1949), 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065.

In granting a temporary injunction, the purpose is to maintain the status quo until a final hearing could be had on issues. It is not an adjudication of merits as upon final hearing. Temporary injunction, ordinarily, is not a substitute for, nor does it serve the same purpose as, a hearing on the merits. The trial court did not abuse its discretion in granting the temporary injunction as to Millwrights Union.

Motion for rehearing overruled.

STEPHENSON, Justice (dissenting).

I respectfully dissent further as follows:

All of the cases cited in the majority opinion as supporting the action of the trial court in entering judgment granting the injunction are "status quo cases." The case pending before us is not a "status quo" case. This trial court disposed of all of the issues pending and left nothing to be determined later. This is not a trespass to try title case, in which one party is restrained from cutting the timber until the issue of title could be determined. This is not a case in which the trial court decided there was a "probable right" and a "probable injury" and entered an order to maintain the status quo until the case could be decided on its merits. These were the merits of this case which the trial court finally determined without giving either party an opportunity to offer evidence.

I would distinguish a case which disposes of all of the issues, from one in which there is an order pendente lite, and require a trial court to hear more than the sworn pleadings and ex parte affidavits before entering a final judgment as was done in this case. In this type of case, a "clear right" to the relief sought must be shown as in a permanent injunction. James v. E. Weinstein & Sons (Tex.Com.App.) 12 S.W.2d 959; Perry v. Stringfellow, 134 Tex. 328, 134 S.W.2d 1031; McMurrey Refining Co. v. State, Tex.Civ.App., 149 S.W.2d 276.