**MILLWRIGHTS LOCAL UNION NO. 2484,**
Petitioners,

v.

**The RUST ENGINEERING CO.,**
Respondent.

**No. B–733.**

Supreme Court of Texas.

Oct. 30, 1968.

Stephenson, Thompson & Morris, Ward Stephenson, Orange, for petitioners.

Fulbright, Crooker, Freeman, Bates & Jaworski, Tommy B. Duke, Houston, for respondent.

CALVERT, Justice.

This is an appeal from a district court judgment granting a writ of temporary injunction, which judgment has been affirmed in part by the court of civil appeals. 424 S.W.2d 283. We reverse the judgment and dissolve the injunction.

This cause originated in the District Court of Orange County, Texas, as an action by The Rust Engineering Company against Millwrights Local Union No. 2484, the United Brotherhood of Carpenters & Joiners of America AFL-CIO, and Carpenters District Council of the Sabine Area and Vicinity. Rust alleged in a sworn petition that it had collective bargaining contracts with the defendants which contracts contained express agreements against strikes and work-stoppages, but that the defendants had posted pickets at the jobsite of its construction project for the purpose of inducing, and had succeeded in inducing, its employees, and employees of its subcontractors, to violate the terms of the contracts by stopping work. It sought a temporary restraining order, a temporary injunction and a permanent injunction against the picketing and work-stoppages.

Upon presentation of the petition on November 3, 1967, the District Judge issued a restraining order in all respects as prayed for, and set a hearing on the application for a temporary injunction for November 10th. A copy of the restraining order was served on D. H. Sartin, Millwrights' agent, on the date of its issuance. On the same date, the judge ordered a writ of attachment to issue for the arrest of Sartin with directions to have him before the court on November 6th to answer for an alleged contempt in violating the restraining order. The writ was executed on November 4th. Thereupon, the attorney for Millwrights requested the judge to move forward the date of hearing on the application for a temporary injunction to November 6th, and the request was granted. It thus came to pass that when the parties appeared in court on November 6th, they were appearing in two proceedings, i. e., the application by Rust for a temporary injunction and the contempt proceeding against Sartin. No written answer or pleading had been filed on behalf of any of the defendants in the injunction suit and neither had one been filed on behalf of Sartin. The situation was not conducive to the orderly transaction of judicial business.

When court was convened, counsel for Millwrights was the first to speak. He stated that he had not had time to prepare and file a written answer and asked permission to state his position. Permission was granted. Thereupon counsel spoke at some length. He stated the contentions of Millwrights with respect to applicable law, including a challenge to the court's jurisdiction, and he read certain provisions from two purported contracts between Rust and the defendant labor organizations covering agreements not to strike and not to stop work. Counsel stated that he did not know whether or not the first contract was still in effect, and that the "no-strike", "no-work-stoppage" provision of the second contract was not applicable to the fact situation. Counsel for Millwrights concluded his rather lengthy statement of his

grounds of defense to the injunction action with these words: "Very briefly stated, this is our position and we feel like that we have a perfect right to do what we have done. We didn't violate the contract, we are not trying to set aside the contract, we are only trying to uphold the contract." The statement was later reduced to writing, sworn to by counsel, and filed as Millwrights' answer.

Counsel for Rust then made a somewhat lengthy statement and argument to the court, after the court had advised him to "go forward on the jurisdiction," principally concerning judicial decisions on questions of state court jurisdiction and federal pre-emption of jurisdiction in labor cases. His statement was followed by further statements and counter-statements by the attorneys; but to this point, neither had remembered, or remembering had bothered, to offer evidence relative to the right of Rust to a temporary injunction. Finally, the court stated: "Let's go forward at this time with the show cause matter."

After a brief discussion with the judge concerning the burden of going forward with evidence, Sartin's counsel placed him on the witness stand for examination and cross-examination. Thereafter, a bystander in the courtroom, D. W. Sumrall, was duly sworn and subjected to examination under oath by the counsel for Rust. At the conclusion of Sumrall's testimony, the court announced that the contempt proceeding was dismissed, but that the writ of temporary injunction would issue. Thereafter, the court's judgment granting the writ of temporary injunction against both Millwrights and Carpenters unions was reduced to writing. The court of civil appeals dissolved the injunction insofar as it purported to restrain activity by Carpenters on the ground that Carpenters had not been served with notice of the hearing. Rust has not complained of that holding. Only Millwrights filed an application for writ of error.

The first question which must be decided is whether there is evidence in

the record supporting the trial court's judgment issuing a writ of temporary injunction against Millwrights. To authorize issuance of the writ, Rust had the burden of not only pleading facts which, if proved, would entitle it to a permanent injunction, but, as well, of offering evidence tending to prove its probable right thereto on final hearing and of probable injury in the interim. Sun Oil Co. v. Whitaker, 424 S.W.2d 216 (Tex.Sup.1968); Oil Field Haulers Ass'n v. Railroad Commission, 381 S.W.2d 183 (Tex.Sup.1964); Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517 (1961). No such proof is to be found in the record unless, as held by the court of civil appeals, Rust's sworn petition may be treated as an affidavit, and the required proof may be made by affidavits. We hold that, in the absence of agreement by the parties, the proof required to support a judgment issuing a writ of temporary injunction may not be made by affidavit, and thus that Rust's sworn petition does not constitute evidence supporting the trial court's judgment in this case.

▮ Before the effective date of the Texas Rules of Civil Procedure in 1941, the statutes of this State expressly authorized issuance of writs of temporary injunction on presentation of sworn petitions and without notice and hearing, Article 4647 provided:[1]

"No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief."

Article 4648 provided:

"If it shall appear to the judge from the facts stated in the petition that the applicant is entitled to the writ, he shall endorse thereon or annex thereto his written order directing the clerk of the proper court to issue the writ of injunc-

tion prayed for, upon such terms and under such modifications, limitations and restrictions as may be specified in said order. * * *"

The only means of obtaining trial court relief from the restraint of such writs was through a motion to dissolve. These statutes are reviewed in Ex parte Coffee, 160 Tex. 224, 328 S.W.2d 283 (1959), at 289–290. Appeals were governed by Article 4662 which contained this provision: "Such case may be heard in the Court of Civil Appeals or Supreme Court on the bill and answer and such affidavits and evidence as may have been admitted by the judge of the court below."

Taken in their statutory context, it is obvious that neither Article 4647, nor the sentence quoted from Article 4662, nor the two in combination, authorized the granting of temporary injunctions upon sworn petition and without supporting evidence. Only Article 4648 provided such authority. When the Rules of Civil Procedure were drafted, Article 4647, unchanged, became Rule 682,[2] and the sentence quoted from Article 4662, in substantially the same language, became paragraph (d) of Rule 385, governing appeals from interlocutory orders. Article 4648 was not carried into the Rules in any form. And yet, the court of civil appeals has used Rule 682 and paragraph (d) of Rule 385 as the basis for its conclusion that a sworn petition for injunctive relief may constitute proof of its essential allegations. Rule 680 was carefully drawn to avoid just such a holding.

▮ Under the provisions of Rule 680, only temporary restraining orders can be granted on sworn petition. The Rule contains the following language:

"In case a temporary restraining order is granted without notice, the application for a temporary injunction *shall be set down for hearing* at the earliest pos-

---

1. All Article references are to Vernon's Ann.Texas Civil Statutes.

2. All Rule references are to Vernon's Texas Rules of Civil Procedure.

sible date and takes precedence of all matters except older matters of the same character; *and when the application comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a temporary injunction and, if he does not do so, the court shall dissolve the temporary restraining order."*

The Rule contemplates that, in the absence of an agreement to the contrary, the court will conduct a "hearing" at which the applicant "shall proceed with the application for a temporary injunction." The conduct of a "hearing" implies that evidence will be offered. There is no basis in the language of Rule 680, or elsewhere that we have been able to discover, for holding that the "application" for a temporary injunction will constitute evidence at the hearing, or that proof may be made in any manner other than according to standard rules of evidence. In support of a holding to the contrary, Rust cites Littlejohn v. Finder, 348 S.W.2d 237 (Tex.Civ.App.—San Antonio, 1961, no writ) and Lee v. Howard Broadcasting Corp., 305 S.W.2d 629 (Tex. Civ.App.—Houston, 1957, no writ). The opinion in *Littlejohn* reflects that "all parties agreed * * * that the matter should be heard and determined upon the pleadings, affidavits and exhibits." The opinion in *Lee* reflects that the conclusion there reached was based upon cases decided before promulgation of Rule 680.

■ A holding that the plaintiff's petition may, in the absence of agreement, be considered as evidence in a hearing on a prayer for temporary injunction is obviously at odds with our own statement of the correct rule to be observed. In Camp v. Shannon, 162 Tex. 515, 348 S.W.2d 517 (1961), at 519, we said:

"An applicant for a temporary injunction seeks extraordinary equitable relief. He seeks to immobilize the defendant from a course of conduct which it may well be his legal right to pursue. Crowded dockets, infrequent jury trial weeks, or trial tactics can often delay a trial of a case on its merits for many months. *The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery.* If not, no purpose is served by the provisions of Rule 680, Texas Rules of Civil Procedure, limiting the time for which a restraining order granted without a hearing can operate and requiring a hearing before a temporary injunction can issue. If he cannot or does not discharge his burden he is not entitled to extraordinary relief. Writs of injunction should not issue on mere surmise."

No evidence was adduced at the hearing that picketing by Sartin and others had the purpose of inducing a breach of contract. No evidence was offered to show that Rust would suffer irreparable injury, or even probable injury, if a temporary injunction were not granted. Not even the contracts on which Rust predicated its suit were proved up or introduced in evidence. The judgment cannot stand.

Having concluded that the judgment of the trial court is not supported by evidence, we do not reach the other questions decided by the court of civil appeals and discussed in the briefs of the parties.

The judgments of the court of civil appeals and the trial court are reversed and the temporary injunction is dissolved.

GRIFFIN, J., dissenting.

REAVLEY, J., not sitting.

GRIFFIN, Justice (dissenting).

I cannot agree with the holding of the majority that there is no evidence to support the trial court's granting of the temporary injunction herein.

First, let us place this case in the setting in which it was tried in the trial court.

On November 6, 1967, when the hearing was had as to whether or not the temporary restraining order would be continued as a temporary injunction and combined with the hearing on the order to Mr. Sartin to show cause why he should not be held in contempt for violation of the restraining order, the defendant Millwrights had filed no answer to either of these matters. When court convened for the hearing, counsel for Millwrights stated that he had filed no answer but that he wished permission to state Millwrights' position "at this time" and that "I would like to do so so that we can get it in the record as our answer in this case." He then proceeded to state his client's contentions and argue same. Such part of this statement and argument as Millwrights' counsel desired was filed as the answer of defendants herein and was sworn to by Millwrights' counsel and by him ordered included in the transcript on appeal. The main content of this answer was a plea by Millwrights that the state court had no jurisdiction of the case, but that Congress, by passing the Labor Management Relations Act, the Taft-Hartley Act, and the Griffin-Landrum Act, had pre-empted this field to federal jurisdiction to the exclusion of the state courts. The burden was on defendant to establish its plea to the jurisdiction. This possibly explains why Millwrights' counsel asked to be heard first. In this case the validity of the plea was determined as a matter of law, based on the allegations of Rust's petition. Also, for the purpose of disposing of the plea to the jurisdiction, the allegations of Rust's petition must be accepted as true. Lacour v. Devers Canal Co. (Tex.Civ.App., 1959), 319 S.W.2d 951, 953, writ refused, n. r. e.

It is too elementary to require any citation of authority that when an adverse party pleads facts necessary to be established by the other party, the other party then has no further burden to establish these facts.

I will now quote from the record in this cause to show that plaintiff's required facts to be proved were admitted in the defendant's answer or were proved by witnesses heard at the hearing.

(1) As to the establishment of the picket line by Millwrights: "Now, we submit that this has not been the case. There has been no more picketing. There has only been two pickets properly picketing." Upon getting the temporary restraining order served on Mr. Sartin, "He came to my office and I advised him * * * that he should go and have withdrawn any Millwright pickets that were up. *I am informed by him and by the steward on the job that this was done.* * * * After the picket was placed up and the picket sign read 'unfair, District Council of Carpenters,' or words to that effect; after the picket was put up, then the employees of Rust refused to cross the picket line." All of the above quotes are from the verified answer filed by defendant, which is a part of this record. These same statements are also found in the statement of facts.

In addition to the answer, the following testimony was given in open court at the hearing and prior to the time the trial court judge announced his decision to grant this temporary restraining order.

Mr. Sartin, the business agent for Millwrights, was placed on the witness stand by Millwrights' attorney and testified in part at follows: "I told three or four Millwrights that were there at the time—one of them was on the picket line walking the picket." On cross-examination, Mr. Sartin testified in answer to a question as to when the picketing actually started that the picketing began Thursday afternoon late around 11:00 or 11:30, or perhaps 10:00 o'clock; that the pickets were set up under his direction; that the District Council authorized the picketing; that he went out to the job site around 5:00 or 5:30 and took all the Millwright pickets off. Other parts of the record show that Mr. Sartin was referring to Friday, November 3, 1967, as the afternoon the Mill-

wright pickets were removed. "I told them that we had been served with a restraining order and I, as agent, had to notify them to cease picketing. * * * I told them we had to cease picketing according to the court."

Mr. Sumrall, a witness from the audience at the hearing, being duly sworn, testified: "There was a Millwright carrying it" (the picket sign on the picket line).

The quoted admissions in the answer, as well as the testimony of the two witnesses, establish as an uncontroverted fact that prior to the issuance of the temporary restraining order Millwrights had established a picket line and were actively engaged in picketing. It also establishes beyond contradiction that Rust employees refused to cross the picket line, and this of course, interfered with the construction job.

(2) As to the existence of a Collective Bargaining Agreement between Rust and Millwrights that there would be no strikes or work stoppage until the dispute had been referred to the International Office of the Union and the Home Office Representative of the employer:

Rust pleaded such provision of the contract. Also, Rust pleaded the provision in the local contract between "CASA", representing Rust, and the Carpenters' District Council, representing Millwrights et al.

In its answer, Millwrights pleaded that there was a contract entered into on the international level by the International Brotherhood of Carpenters & Joiners and Rust engineers. Millwrights, in its answer, pleaded among other provisions of this contract the identical clause regarding lockouts, work stoppage or strikes as that pleaded by Rust in its petition. The answer also says that Millwrights' counsel does not know whether or not this contract is still in existence, but that he has no knowledge that it is not. The answer further alleges that Millwrights' counsel will be glad to present this contract to the court for more careful study and reading.

The answer also pleads the same identical provision of the CASA contract with the Sabine Area Construction Committee as representatives of Rust; and the Carpenters' District Council, representing Millwrights. The answer also pleads there is no dispute over this agreement and there is no request that it be changed, and they know of no attack made on the validity of this contract; and also "we didn't violate the contract, we are not seeking to set aside the contract, we are only trying to uphold the contract." Rust's counsel, at the request of the court during the hearing and prior to the court's order granting the temporary injunction, furnished a copy of the contract to the court.

There is in the record a supplemental transcript of the proceedings in this case, filed six days after the filing of the original transcript in the Court of Civil Appeals. This supplemental transcript was prepared by the district clerk in response to a letter from the trial judge, stating that the instruments contained therein were ones tendered to him during the hearing and were considered by him. Among the instruments contained therein was the contract between National Constructors Association and the United Brotherhood of Carpenters & Joiners of America and Rust Engineering Company. It also contains the agreement between the Carpenters District Council of the Sabine Valley Area and Vicinity and Sabine Area Construction Committee. This contract binds Millwrights and Rust. The two "nonstrike" clauses referred to above are contained in these two instruments.

In view of the sworn answer and the contracts in the record, I am unable to say that there is no evidence to support the trial court's action.

It is established beyond dispute:

(1) That Rust and Millwrights had two contracts governing their relations that prevented work stoppages, lock-outs or strikes.

(2) It is further conclusively established that Millwrights had established a picket line in violation of each of these contracts.

(3) It is further conclusively established that when the picket line was established, other Rust employees refused to cross the picket line, thus causing a cessation or slowing down of work on the construction contract. Should the picketing continue, the job would be shut down.

(4) From all these facts, the trial court had a right to find that Rust was damaged by the picket line and that Rust had a probable right to a permanent injunction on final hearing of the cause.

Therefore, the trial court did not abuse his discretion in granting the temporary injunction.

There is much evidence to support the trial court's order. The allegations of Rust's sworn petition are not all the evidence supporting the trial court's order. In fact, this record shows other and additional proof and admissions present.

I would affirm the judgment of the Court of Civil Appeals herein.