KWEL, INC., Appellant,

v.

John Preston PRASSEL, Appellee.

No. 6464.

Court of Civil Appeals of Texas, El Paso.

Sept. 17, 1975.

Rassman, Gunter & Boldrick, James P. Boldrick, Midland, for appellant.

Kerr, Fitz-Gerald & Kerr, Ted M. Kerr, Midland, for appellee.

## OPINION

OSBORN, Justice.

This appeal results from the trial Court's denial of an application for a temporary injunction in a suit seeking to enforce a covenant not to compete in an employment contract. We affirm.

Mr. Bob Hicks, General Manager of Radio Station KWEL in Midland, Texas, hired Appellee as a radio announcer in November, 1974. An employment contract was executed on November 18, 1974, which contained the following provision:

"While working under the provisions of this agreement, you will not engage in professional activities as an announcer, actor, master of ceremonies or other performer without express prior consent of the Company. It is further agreed that,

for a period of 12 months following the termination of this contract, or any extension hereof, you will not engage in announcing or sales activities in connection with any advertising media within a 75 mile radius of the office of Company."

For some unexplained reason, the names of the parties were reversed when the contract was signed, and a literal reading of the agreement would indicate Appellee had hired Bob Hicks as an announcer and that Mr. Hicks was the party who coveted not to compete. None of the parties complain about this defect in the contract.

Upon trial of the case, Appellee testified that he signed the contract, worked as an announcer for KWEL until March 29, 1975, when his employment was terminated at the request of Mr. Hicks, who suggested that he find another job. Within about a week, Appellee was employed by KNAM–FM Radio Station in Midland as an announcer and producer of commercial announcements. The new job entailed the same type work he did at KWEL, but the broadcasting format at the new job was different, in that he was only on the air about three minutes every hour with station identification, time, temperature and some identification of records being played. He acknowledged that this work was a violation of his employment contract with KWEL, but denied that it caused any damage to his prior employer. While at KWEL, he did not have any selling duties and did not call upon advertising customers. He specifically denied providing any customer list or price list from KWEL to KNAM–FM.

Mr. Hicks testified that Appellee had access to customer list, drop dates when advertising contracts expired, and that his rapport both with customers and advertisers could be detrimental when there was a change from one station to another. But he readily acknowledged that he did not know that Mr. Prassel ever saw KWEL advertising price list, did not know that Mr. Prassel made any record of advertising drop

dates, and acknowledged that the only way to tell if there had been any loss of customers would be through a listeners' survey. His exact testimony was as follows:

"Q  Well, all I'm asking is do you know whether or not he did that, he went and got your customer list out and your price list out?

"A  To my knowledge, I didn't see him do it."

"  *    *    *

"Q  But at any rate, would you not agree that it would be very difficult, unless someone wrote those drop dates down, if his position was as an announcer and not in the business office?

"A  I don't know that he didn't write it down.

"Q  But do you know that he did?

"A  No, sir.  Nor do I know that he didn't.

"Q  Mr. Hicks, other than the fact that he might have—or a person could have written down the dates of the drop dates, do you know of any other amount of damage that possibly could occur?

"A  Yes, sir, possibly we could lose listeners, because in my opinion John is a very good radio announcer.

"Q  Do you know of any listeners you have lost, or can identify any listeners you will lose, because of that?

"A  This would probably have to be determined by a survey."

Appellant contends in a single point of error that the trial Court erred in denying it a temporary injunction and that such was an abuse of discretion.  Certainly we can agree that the terms of the covenant are reasonable.  *Professional Beauty Products, Inc. v. Derington*, 513 S.W.2d 236 (Tex.Civ. App.—El Paso 1974, writ ref'd n. r. e.); *Middagh v. Tiller-Smith Company*, 518 S.W.2d 589 (Tex.Civ.App.—El Paso 1975, no writ).

To warrant the issuance of a temporary injunction, the applicant must show both a probable right thereto on final hearing and a probable injury in the interim.  *Millwrights Local Union No. 2484 v. Rust Engineering Co.*, 433 S.W.2d 683 (Tex.1968). The evidence establishes a probable right but not a probable injury, and thus the application for an injunction should not have been granted.  *Armendariz v. Mora*, 526 S.W.2d 542 (Tex.1975).

Evidence that Appellee had access to the station price list is not evidence that he obtained it or used it adversely to KWEL. Evidence that he saw the drop dates for advertisers is not evidence that he recorded or memorized those dates and used them adversely to KWEL.  Evidence that "we could lose listeners" is not evidence that KWEL either did or probably will lose some advertising audience.

In affirming the order of the trial Court, we follow the rules set forth in *Camp v. Shannon*, 162 Tex. 515, 348 S.W.2d 517 (1961), where Chief Justice Calvert, writing for the Court, said:

"  *    *    *  An applicant for a temporary injunction seeks extraordinary equitable relief.  He seeks to immobilize the defendant from a course of conduct which it may well be his legal right to pursue.  Crowded dockets, infrequent jury trial weeks, or trial tactics can often delay a trial of a case on its merits for many months.  The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery.  If not, no purpose is served by the provisions of Rule 680, Texas Rules of Civil Procedure, limiting the time for which a restraining order granted without a hearing can operate and requiring a hearing before a temporary injunction can issue.  If he cannot or does not discharge his burden he is not entitled to extraordinary relief.  *Writs of injunction should not issue on mere surmise*." (Emphasis added).

The Appellant's point of error is overruled and the order of the trial Court is affirmed.