Randi PIERCE d/b/a Flowers For You, Inc. d/b/a Your Florist, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–04–01208–CV.

Court of Appeals of Texas, Dallas.

Nov. 16, 2005.

Rehearing Overruled March 2, 2006.

Jules P. Slim, Irving, for Appellant.

Phillip Ledbetter, Asst. Atty. Gen., Consumer Protection Division, Dallas, for State.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice WRIGHT.

In this interlocutory appeal, we must determine whether the trial court erred in granting the State of Texas's request for a temporary injunction and asset freeze. In five points of error, Randi Pierce contends generally: (1) the State lacks standing to bring this action; (2) the trial court erred in granting the temporary injunction by only considering affidavit testimony; (3) the trial court erred in granting the temporary injunction in the absence of an allegation that Pierce committed any wrongdoing; and (4) the trial court erred in freezing Pierce's assets. We overrule Pierce's points of error and affirm the temporary injunction.

### Background

Pierce operates a floral shop known as Your Florist. She allows her customers to pay for their purchases with credit/debit cards. The State received numerous complaints from customers of Your Florist about unauthorized charges on their credit/debit cards. These customers purchased flowers from Your Florist and paid for those purchases with their credit/debit cards. Subsequently these customers began noticing additional charges on their credit/debit card statements despite the fact that they had not made or authorized any additional purchases. Upon noticing these unauthorized charges, these customers complained to Pierce and sought reim-

bursement. Pierce was generally evasive and unresponsive to the majority of the complaints. Many customers had no recourse but to cancel their credit card accounts or obtain new account numbers. Those who did not do so, sometimes saw yet additional unauthorized charges on their accounts.

Faced with numerous complaints about these practices of Pierce's business, the State sued Pierce alleging violations of the Deceptive Trade Practices Act. The trial court issued a temporary restraining order with asset freeze and set the case for a hearing on the State's application for a temporary injunction. Following the hearing, the trial court issued the temporary injunction with asset freeze. This interlocutory appeal timely followed.

## Temporary Injunction

### 1. Standing

In her second point of error, Pierce contends the Attorney General lacks standing to bring this action. Specifically, Pierce contends that making unauthorized charges on customers' credit cards is not an unlawful practice under the DTPA.

The attorney general may bring an action in the name of the state against any person he believes is engaged in unlawful practices under the Deceptive Trade Practices Act. *See* TEX. BUS. & COM.CODE ANN. § 17.47(a) (Vernon Supp.2005). The DTPA provides a noninclusive list of unlawful practices. Among the unlawful practices listed are:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

\* \* \*

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

\* \* \*

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed; ...

TEX. BUS. & COM.CODE ANN. § 17.46(b) (Vernon Supp.2005).

Pierce contends the DTPA does not authorize the State to bring an enforcement action relating to an alleged taking of money by unauthorized credit and debit card transactions. Pierce contends that the alleged unauthorized use of the customers' credit cards is not a service within the meaning of the DTPA. We disagree.

In its petition, the State alleged that Pierce engaged in the following unlawful practices: (1) placing unauthorized charges on the florist customers' credit cards; (2) falsely representing to credit card companies that the customers approved the unauthorized charges; (3) falsely representing that customers who purchase goods from the florist are obligated to pay for additional unauthorized charges to their credit cards; and (4) failing to disclose that Pierce, the florist, or its employees may make unauthorized charges on the customers' credit cards in order to induce them to enter into sales transactions that they otherwise would not have entered into had that information been disclosed.

Allowing her customers to pay with their credit cards is part of the service Pierce

provided in making sales transactions. Without a sales transaction, the deception would not have occurred. In the minds of the customers, payment for the goods with a debit/credit card concluded the sales transaction. However, without telling its customers, Pierce allegedly made additional charges on the customers' credit cards for goods which were neither requested nor received. Had the customers known this information, they would not have purchased flowers from Your Florist.

These allegations do constitute unlawful practices under the DTPA. They constitute a deceptive act involving a service and a sales transaction. Therefore, we conclude the attorney general did have standing to bring this action in the name of the State. We overrule Pierce's second point of error.

## 2. Evidence to Support the Temporary Injunction

In her first point of error, Pierce contends the trial court erred in granting the temporary injunction because there was no evidence to support it. Pierce argues that the only evidence at the hearing were affidavits which, as a matter of law, cannot support a temporary injunction.

To review a "matter of law" challenge, the court must first examine the record to determine whether there is any evidence to support the challenged finding. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, then the court must determine whether there is evidence to support the opposite finding. *Id.* If there is any evidence of probative force to support the challenged finding, then the "matter of law" challenge must fail. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

In its order setting the date for the temporary injunction hearing, the trial court ordered that all testimony was to be reduced to affidavits or deposition excerpts. Pierce contends that a temporary injunction cannot issue on affidavit testimony alone. She cites two cases to support her contention. *See Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683 (Tex.1968); *Texas State Bd. of Educ. v. Guffy*, 718 S.W.2d 48 (Tex.App.-Dallas 1986, no writ). Both cases, however, are distinguishable. In *Millwrights*, Rust Engineering sought a temporary injunction to prevent union members from picketing on its property. *Millwrights*, 433 S.W.2d at 684. Rust Engineering did not present any evidence at the temporary injunction hearing. The issue before the supreme court was whether the applicant's sworn petition could be treated as an affidavit and constitute sufficient evidence to support the temporary injunction. *Id.* at 686. The supreme court analyzed the requirement of a hearing in rule 680 and concluded that "the conduct of a "hearing" implies that evidence will be offered." *Id.* at 687. In reaching its holding, the supreme court noted that although a temporary restraining order may issue on a sworn petition, a temporary injunction requires evidence admitted at a hearing. *Id.* at 686–87; *see also In re Texas Natural Resource Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex.2002).

In *Guffy*, a teacher, Freeman Guffy, obtained a temporary injunction preventing the enforcement of a new testing requirement for teachers. *Guffy*, 718 S.W.2d at 49. Like the plaintiff in *Millwrights*, however, Guffy failed to present any evidence at the temporary injunction hearing. *Id.* Accordingly, following the supreme court's holding in *Millwrights*, this Court dissolved the temporary injunction. *Id.* at 50. *See also Bay Fin. Sav. Bank, F.S.B. v. Brown*, 142 S.W.3d 586, 589–90 (Tex.App.-Texarkana 2004, no pet.) (temporary injunction dissolved where movant offered no evidence at the hearing and where it appeared trial court considered only the

documents attached to the verified motion for temporary injunction).

In contrast to *Millwrights* and *Guffy*, evidence was introduced and admitted at the temporary injunction hearing in this case. The trial court stated that it would consider affidavit testimony and deposition excerpts at the hearing. The State presented affidavit testimony at the temporary injunction hearing. The trial court admitted the affidavits into evidence. Pierce objected to the trial court's reliance on affidavits. Pierce wanted the opportunity to present live witnesses. In response, the trial court gave the parties the opportunity to return the following day and present live testimony. Neither party took advantage of this opportunity.

■ The record before this Court contains the affidavit evidence admitted during the temporary injunction hearing. We conclude a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon. Pierce has not cited any authority to the contrary.

Because there is evidence to support the temporary injunction, Pierce's "matter of law" challenge fails. We overrule Pierce's first point of error.

**3. Allegations of Wrongdoing by Pierce**

■ In her third point of error, Pierce contends the issuance of the temporary injunction was improper because there is no verified allegation that any wrongful act was committed by Pierce herself or that she should be held responsible for the intentional wrongful acts of any of her employees.

■ We review a trial court's order granting or denying a request for a temporary injunction under an abuse of discretion standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002); *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993); *Walter v. Walter,* 127 S.W.3d 396, 398 (Tex.App.-Dallas 2004, no pet.). The reviewing court should reverse an order granting injunctive relief only if the trial court abused its discretion in granting said relief. *Butnaru,* 84 S.W.3d at 204; *Walling,* 863 S.W.2d at 58.

The affidavits submitted with the petition for temporary restraining order and asset freeze contain numerous allegations against Pierce. Nancy Saltzman stated in her affidavit that she spoke with Pierce about the unauthorized charges on her credit card. Pierce promised to research the unauthorized charges and call her back to facilitate reimbursement. Pierce never called her back. Mary Nicole Sladovnik testified that she too spoke with Pierce about an unauthorized charge. Although Pierce promised to credit her account for the unauthorized charge and call her back, she did neither. The State filed the affidavit of Gene Hempy prior to the temporary injunction hearing. Hempy is a freelance floral designer who worked at Your Florist on a seasonal basis. While employed at Your Florist, employees told Hempy that Pierce ran unauthorized charges on customers' credit cards. When customers came in to complain about the unauthorized charges, Pierce told her employees to lie and say that she was not in. She also hid in the back of the store or left the store in order to avoid the complaining customers. Each of these affidavits was admitted into evidence at the temporary injunction hearing.

Contrary to Pierce's contention, there were numerous verified allegations introduced into evidence that Pierce engaged in deceptive trade practices. We conclude the trial court did not abuse its discretion in issuing the temporary injunction. We overrule Pierce's third point of error.

## Asset Freeze

In her final two points of error, Pierce asserts the trial court erred in imposing the asset freeze.[1] Specifically, Pierce contends this was error because the State did not request such relief and because it does not preserve the status quo.

In its petition and application for temporary restraining order and asset freeze, the State specifically requested that Pierce's assets "be frozen during the pendency of these legal proceedings to preserve monies for consumer restitution upon final judgment." This request is under the heading "Application for Ex Parte Temporary Restraining Order, Temporary Injunction, and Permanent Injunction and Asset Freeze." The State also argued at the hearing that Pierce's assets should be frozen in order to preserve money for repayment to victimized customers and, also, to prevent further unauthorized charges by Pierce. We find no merit to Pierce's argument that the State did not ask the trial court to freeze the assets.

We turn now to Pierce's second argument that the asset freeze fails to preserve the status quo. The purpose of a temporary injunction is to maintain the status quo. *In re Newton*, 146 S.W.3d 648, 651 (Tex.2004). Status quo is defined as "the last, actual, peaceable, non-contested status which preceded the pending controversy." *Id.* By definition, continuation of illegal conduct cannot be justified as preservation of the status quo. *Id.* When it is determined that the law is being violated, it is the duty of the court to restrain it.

*Rattikin Title Co. v. Grievance Comm. of State Bar of Texas*, 272 S.W.2d 948, 955 (Tex.Civ.App.-Fort Worth 1954, no writ).

At the temporary injunction hearing, the trial judge stated that the only way to prevent Pierce from continuing to make unauthorized charges to customers' credit cards is "to prevent her access to a financial institution." The asset freeze imposed by the trial court prevented Pierce from continuing to make unauthorized charges on customers' credit cards. Preserving the status quo of Pierce and her business could not as a matter of law include the continuation of making unauthorized charges on customers' credit cards. Accordingly, imposing a freeze to prevent such conduct did not disrupt the status quo. We conclude the trial court did not abuse its discretion in issuing the temporary injunction with asset freeze. We overrule Pierce's fourth and fifth points of error.

We affirm the temporary injunction with asset freeze.

---

1. The temporary injunction with asset freeze prohibits Pierce from:

    A. transferring, spending, concealing, encumbering, withdrawing, removing, or allowing the transfer, removal, or withdrawal from any financial institution or from the jurisdiction of this Court, any money, stocks, bonds, assets, notes, equipment, funds, accounts receivable, policies of insurance, trust agreements, safe deposit boxes, or other property, real, personal, or mixed, wherever situated, belonging to or owned by, in the possession or custody of, standing in the name of, or claimed by said Defendant without further order of this Court; . . .