

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## 13-11-00281-CV

## IN RE SHAMOUN & NORMAN, LLP, ET AL.

**On Petition for Writ of Mandamus.**

## 13-11-00087-CV

**SHAMOUN & NORMAN, LLP, ET AL.,**                                      Appellants,

**v.**

**YARTO INTERNATIONAL GROUP, L.P. AND
YIG-GP, LLC,**                                      Appellees,

## 13-11-00256-CV

**SHAMOUN & NORMAN, LLP, ET AL.,**                                      Appellants,

**v.**

**ROBERT YARTO, ET AL.,**                                      Appellees,

**On appeal from the 332nd District Court
of Hidalgo County, Texas**

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Vela
## Memorandum Opinion by Justice Garza

By two interlocutory appeals and a petition for writ of mandamus, appellants/relators Shamoun & Norman, LLP, Gregory Shamoun and Brian Norman (collectively "Shamoun") challenge (1) the trial court's order imposing an anti-suit injunction, (2) its order denying a motion to transfer venue, and (3) its failure to rule on an agreed motion to transfer venue. We will reverse the trial court's anti-suit injunction and remand for further proceedings, dismiss Shamoun's appeal regarding venue for want of jurisdiction, and conditionally grant the petition for writ of mandamus in part.

## I. BACKGROUND

Shamoun, a law firm based in Dallas County, was sued by appellee/real party in interest Robert Yarto on April 28, 2010 in Hidalgo County. Yarto asserted claims of professional negligence, breach of fiduciary duty, and theft of trade secrets. Yarto's petition, which requested damages and injunctive relief, alleged that Shamoun represented Yarto on several prior occasions but is "currently representing parties adverse to [Yarto] on matters similar to those for which [it] had previously represented [Yarto]." Yarto further alleged that Shamoun "illegally obtained confidential financial documents and/or trade secrets belonging to [Yarto]." According to the petition, Shamoun breached its fiduciary duty to Yarto by (1) "represent[ing] parties adverse to [Yarto]," (2) "disclos[ing] confidential communications" to those adverse parties during a

2010 mediation in Travis County, and (3) "us[ing] illegally obtained documents to [Yarto]'s detriment." The petition also named Rhoderick Williams and Steven Winkler as defendants.[1]

On April 29, 2010, Shamoun answered Yarto's suit and filed a motion to transfer venue. The answer contained a general denial of Yarto's allegations and asserted various affirmative defenses. The motion to transfer asserted that Dallas County or Collin County was a proper venue for the litigation, and Hidalgo County was improper, because: (1) the alleged tortious acts and omissions occurred in Dallas and/or Collin Counties; (2) Shamoun maintains its principal place of business in those counties; and (3) witnesses, documents, and evidence related to the case are located in those counties.

The next day, Yarto's suit was removed to bankruptcy court. The debtor in the bankruptcy proceedings was YITC-GP, LLC ("YITC-GP"), a corporation set up to serve as general partner of Yarto International Trading Group, L.P. ("YITC"). YITC and YITC-GP, as well as two other entities, appellees/real parties in interest Yarto International Group, L.P. ("YIG"), and YIG-GP, LLC ("YIG-GP"), were founded by Yarto but later came to be owned and operated by Williams and Winkler.[2] At the time the bankruptcy proceedings commenced, YIG, YITC, Williams and Winkler were all represented by Shamoun in various lawsuits involving Yarto and multiple third parties. All of those pending cases, along with Yarto's suit against Shamoun, were removed to bankruptcy court on April 30, 2010. *See* 28 U.S.C. § 1334(b) (stating that federal district courts

---

[1] Williams and Winkler are two of the adverse parties that Yarto claims Shamoun is representing to his detriment. Williams and Winkler are not parties to the proceedings before this Court.

[2] For ease of reference, YIG and YIG-GP will be referred to collectively as "YIG," and YITC and YITC-GP will be referred to collectively as "YITC."

3

have "original but not exclusive jurisdiction of all civil proceedings . . . arising in or related to cases under" the federal bankruptcy code); *id.* § 1452(a) (providing for removal to bankruptcy court of claims related to bankruptcy cases).

Eventually, the parties agreed to settle their outstanding claims in exchange for mutual releases. A global settlement agreement, drafted by Shamoun at the direction of the parties, was executed on December 9, 2010. As part of the agreement, YIG agreed to transfer certain assets to YITC; Williams and Winkler agreed to transfer ownership of YIG to Yarto; and YITC pledged to pay more than $1.5 million in settlement payments to various parties.[3] The agreement further provided that: (1) YITC would release Yarto from any and all claims related to the pending litigation; and (2) Yarto would release YITC, along with its "past and present agents, representatives, officers, directors and attorneys," including Winkler and Williams, from any and all claims related to the pending litigation, with one notable exception:

> 15. <u>Shamoun Litigation.</u> Nothing in this Agreement shall be construed as a release of Shamoun by Yarto. The Parties hereby acknowledge and agree that, with respect to any claim, lawsuit, complaint or proceeding (whether judicial or otherwise) brought by any of the Yarto Parties [i.e., Yarto and YIG] . . . against Shamoun and/or any of its partners or affiliates (in each case, a "Shamoun Claim"), (a) such Shamoun Claim shall be brought in an appropriate state court located in Travis County, Texas, and (b) none of the Yarto Parties . . . shall be permitted to bring a Shamoun Claim in any court not located in Travis County, Texas. The parties hereby acknowledge[] and agree that (y) Shamoun is and shall be considered a third-party beneficiary[4] with respect . . . to [this] Agreement, and (z) Shamoun shall have the right to directly enforce this provision . . . on Shamoun's own behalf.

---

[3] Specifically, the agreement called for YITC to make payments of $1,165,000 to JenRob Investments, L.P., $300,000 to Compass Bank, and $312,500 to David Girault. Each of the specified payees was involved in the pending litigation and each was a party and signatory to the settlement agreement.

[4] Shamoun was not a signatory to the settlement agreement, even though it was already a party to the underlying litigation at the time the agreement was reached.

4

The agreement stated that, upon execution of the settlement documents, Yarto's suit against Shamoun would be remanded from bankruptcy court to state district court.[5] The settlement agreement also contained the following paragraph:

> 27. <u>SUBMISSION TO JURISDICTION</u>. THE PARTIES HEREBY AGREE THAT ANY AND ALL CLAIMS, ACTIONS, CAUSES OF ACTION, SUITS, AND PROCEEDINGS RELATING TO THIS AGREEMENT OR THE OTHER AGREEMENTS CONTEMPLATED HEREIN SHALL BE FILED AND MAINTAINED ONLY IN AN APPROPRIATE STATE OR FEDERAL COURT IN TRAVIS COUNTY, TEXAS, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT.

On December 1, 2010, after the settlement agreement had been negotiated but prior to its execution, Shamoun sent a letter to Williams and Winkler addressing Shamoun's status theretofore as counsel of record for YIG. The letter stated:

> Prior to the settlement, this firm provided services to the so-called YITC Parties which, at the beginning, included [YIG]. Pursuant to the Settlement Agreement, [YIG is] transferring certain assets to the YITC parties and ownership of [YIG] will be transferred solely to the so-called "Yarto Parties" side of the litigation. This letter is to confirm and clarify that, this firm provided services only to the YITC Parties. With respect to the Settlement Documents which provide that [YIG] will be transferred to the Yarto Parties, this firm has not represented [YIG]. [YIG] further acknowledge[s] that [it was] promptly made aware of this issue and [was] advised of [its] right to retain separate counsel to advise [it] regarding the YIG Settlement Documents and this letter.
>
> [YIG] understand[s] that the YIG Settlement Documents were prepared according to instructions of the YITC Parties and the final instructions from the parties utilizing the YIG Settlement Documents and their attorneys at the time of closing of the YIG Settlement Documents. No representations have been made as to the legal effects or tax consequences of the YIG Settlement Documents. Additionally, [YIG] acknowledge[s] that [it] understand[s] that [Shamoun] has made no independent investigation, representation or assurance whatsoever regarding the compliance of the contemplated transaction as evidenced by the YIG Settlement Documents with tax, securities, or other law of the United States of America having jurisdiction over this transaction.

---

[5] The agreement also helpfully provided that Winkler and Williams, owners and operators of YITC and YITC-GP, must change the names of those entities so that they do not include the word "Yarto."

> [YIG] understand[s] that [Shamoun] is not employed for representation generally or for any purpose in connection with the YIG Settlement Documents other than that stated above. [YIG] acknowledge[s] that [it has] read, understand[s], and hereby approve[s] of the YIG Settlement Documents.

The letter was countersigned by Williams and Winkler as representatives of YIG.

After the settlement agreement was executed, the bankruptcy court remanded Yarto's suit to state district court in Hidalgo County. Yarto and Shamoun were the only parties remaining in the pending litigation. On December 29, 2010, Yarto filed an "Agreed Motion to Transfer Venue" in which he conceded that he "agreed in the settlement agreement to prosecute his remaining claims against [Shamoun] solely in Travis County, Texas." The motion was signed by counsel for both Yarto and Shamoun.

However, on January 19, 2011, before the trial court heard or ruled upon the agreed motion to transfer, YIG intervened in the case. Its petition in intervention, sworn to by Yarto as an authorized representative of YIG, asserted that Shamoun committed professional negligence and breached its fiduciary duty by, among other things: (1) representing parties adverse to YIG; (2) disclosing confidential communications involving YIG; and (3) "conspir[ing] with others to divest [YIG] of valuable and lucrative assets, leaving [YIG] devoid of all assets." YIG additionally alleged that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]." The petition stated that "[v]enue is proper as to Intervenors because all or a substantial part of the acts and/or omissions complained of occurred in Hidalgo County . . . and Intervenors' claims arise from the same set of operative facts as [Yarto]'s claims." YIG's

6

petition in intervention sought damages as well as injunctive relief, claiming that Shamoun "ha[s] already demonstrated the propensity to avoid this proper venue [Hidalgo County district court] at any cost, including the filing of frivolous pleadings and proceedings." YIG requested an anti-suit injunction, noting that Shamoun had already brought suit against it in Dallas County and arguing that "there is an imminent threat of irreparable harm that [Shamoun] will, once again, attempt to avoid this proper venue by filing additional frivolous pleadings or proceedings in one or more different venues."

After YIG filed its petition in intervention, Shamoun filed an amended motion to transfer arguing that the action should be transferred either to Travis County or Dallas County. The amended motion contended that Travis was a proper venue because Yarto "entered into a valid, binding contractual agreement to place venue in Travis County" and "the alleged acts of which [Yarto] complains occurred, if at all, in Travis County. . . ."

The trial court granted YIG's request for a temporary restraining order and, after a hearing on January 27, 2011, the trial court granted the requested temporary anti-suit injunction. Both orders enjoined Shamoun from "filing, initiating, serving any process, [or] continuing any litigation against [YIG and YIG-GP or their] employees, agents and representatives in any other court or forum unless leave of this Court is first obtained." Shamoun appealed the temporary injunction order.[6] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008) (permitting appeal from interlocutory order granting temporary injunction).

At the January 27, 2011 hearing, the trial court was advised that Yarto's "Agreed

---

[6] Appellate cause number 13-11-00087-CV.

7

Motion to Transfer Venue" and Shamoun's separately-filed motion to transfer were still pending. A hearing was held on the venue issue on March 10, 2011. On March 31, 2011, the trial court rendered an order denying Shamoun's motion to transfer venue. The court did not rule on the "Agreed Motion to Transfer Venue" filed by Yarto.[7] Shamoun appealed the trial court's judgment,[8] *see id.* § 15.003(b)(1) (West Supp. 2010) (permitting appeal of interlocutory order determining that a plaintiff independently established proper venue), and filed a petition for writ of mandamus.[9]

## II. DISCUSSION

### A. Anti-Suit Injunction

In appellate cause number 13-11-00087-CV, Shamoun argues that the trial court erred by granting YIG's request for a temporary anti-suit injunction.

#### 1. Standard of Review

Whether to grant or deny a temporary injunction is within the trial court's sound discretion. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993); *State v. Walker*, 679 S.W.2d 484, 485 (Tex. 1984)). We will reverse an order granting injunctive relief only if the trial court abused that discretion. *Id.* (citing *Walling*, 863 S.W.2d at 58; *Walker*, 679 S.W.2d at 485).

#### 2. Applicable Law

In general, the purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id.* An anti-suit injunction, in

---

[7] The record reflects that counsel for Shamoun sent a letter to the trial court on April 7, 2011, asking if the court intended to enter an order ruling on the agreed motion. The trial court's assistant sent the letter back to counsel on April 11, 2011, with a simple "No!" written on it.

[8] Appellate cause number 13-11-00256-CV.

[9] Appellate cause number 13-11-00281-CV.

8

particular, will issue "only in very special circumstances." *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649, 651 (Tex. 1996) (citing *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex. 1986)). An applicant for an anti-suit injunction must show that "a clear equity demands" such relief in order to: (1) address a threat to the court's jurisdiction; (2) prevent the evasion of important public policy; (3) prevent a multiplicity of suits; or (4) protect a party from vexatious or harassing litigation. *Id.* (citing *Christensen*, 719 S.W.2d at 163; *Gannon*, 706 S.W.2d at 307). We have stated that the majority rule in Texas is that a party seeking an anti-suit injunction must satisfy the traditional prerequisites to injunctive relief as well as the more specific requirements applicable only to anti-suit injunctions. *See Yarto v. Gilliland*, 287 S.W.3d 83, 88 n.8 (Tex. App.—Corpus Christi 2009, no pet.) (listing cases); *see also Counsel Fin. Servs., L.L.C. v. Leibowitz*, No. 13-10-00200-CV, 2011 Tex. App. LEXIS 5079, at *32–33 (Tex. App.—Corpus Christi July 1, 2011, no pet.) (mem. op.); *Freddie Records, Inc. v. Ayala*, No. 13-07-00363-CV, 2009 Tex. App. LEXIS 7681, at *12 (Tex. App.—Corpus Christi Sept. 30, 2009, no pet.) (mem. op.).[10]

---

[10] Though a majority of courts have held that an anti-suit injunction applicant must meet the traditional requirements for injunctive relief, there remains conflict and confusion over this issue. *See, e.g., Bay Fin. Sav. Bank v. Brown*, 142 S.W.3d 586, 591 (Tex. App.—Texarkana 2004, no pet.) (holding that anti-suit injunctions must also comply with requirements provided in rules of civil procedure); *Marroquin v. D & N Funding, Inc.*, 943 S.W.2d 112, 114 (Tex. App.—Corpus Christi 1997, no pet.) (assessing whether a trial court erred in denying request for an anti-suit injunction by assessing whether party had pleaded and proven a probable injury if relief was denied and a probable right to recovery); *Total Minatome Corp. v. Santa Fe Materials, Inc.*, 851 S.W.2d 336, 339 (Tex. App.—Dallas 1993, no writ) (holding that "clear equity" justifying an anti-suit injunction requires showing of irreparable injury, inadequate remedy at law, and probable right of recovery); *but see, e.g., In re Henry*, 274 S.W.3d 185, 193–94 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (op. on reh'g) (rejecting contention that a party seeking an anti-suit injunction is also required to establish a probable right of recovery in the underlying lawsuit, irreparable harm, and that no adequate remedy at law exists); *Admiral Ins. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 848 S.W.2d 251, 258 (Tex. App.—Fort Worth 1993, writ denied) (rejecting contention that a person seeking an anti-suit injunction must establish a probable right to recovery on the merits). The Texas Supreme Court has not explicitly ruled on this issue; however, in 2005, the Court addressed only the requirements specific to anti-suit injunctions in affirming the issuance of such an injunction. *See Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 623 (Tex. 2005).

9

Those traditional prerequisites are: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru,* 84 S.W.3d at 204 (citing *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968)).

In the context of a request for temporary injunctive relief, a probable right to recovery and probable injury must be established by competent evidence adduced at a hearing. *Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968); *see Armendariz v. Mora*, 526 S.W.2d 542, 543 (Tex. 1975); *see also Compass Bank v. Barrera*, No. 13-10-00529-CV, 2011 Tex. App. LEXIS 1558, at *7–8 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet.) (mem. op.); *McDaniel v. Connelly*, No. 13-08-230-CV, 2008 Tex. App. LEXIS 5119, at *2–3 (Tex. App.—Corpus Christi July 3, 2008, pet. denied) (mem. op.).[11] However, a sworn petition does not constitute evidence. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *Rogers v. Howell*, 592 S.W.2d 402, 403 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.); *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at *9. Further, in the absence of an agreement

---

We need not decide whether the traditional injunction requirements apply to anti-suit injunctions because, even assuming they do not apply, YIG has still failed to meet its burden because it did not produce any evidence on the requirements specific to anti-suit injunctions.

[11] More than half a century ago, the Texas Supreme Court explained why competent evidence is required to support a request for temporary injunction:

> An applicant for a temporary injunction seeks extraordinary equitable relief. He seeks to immobilize the defendant from a course of conduct which it may well be his legal right to pursue. Crowded dockets, infrequent jury trial weeks, or trial tactics can often delay a trial of a case on its merits for many months. The applicant has, and in equity and good conscience ought to have, the burden of offering some evidence which, under applicable rules of law, establishes a probable right of recovery. If not, no purpose is served by the provisions of Rule 680, [Texas Rules of Civil Procedure], limiting the time for which a restraining order granted without a hearing can operate and requiring a hearing before a temporary injunction can issue. If he cannot or does not discharge his burden he is not entitled to extraordinary relief. Writs of injunction should not issue on mere surmise.

*Camp v. Shannon*, 162 Tex. 515, 519, 348 S.W.2d 517, 519 (1961).

between the parties, the proof required to support a judgment issuing a temporary injunction may not be made by affidavit. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *but see Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) (holding that "a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon") (emphasis in original). And, "remarks of counsel during the course of a hearing are not competent evidence unless the attorney is actually testifying." *Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.); *see Collier Servs. Corp. v. Salinas*, 812 S.W.2d 372, 377 (Tex. App.—Corpus Christi 1991, orig. proceeding); *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at *10.

### 3.    Analysis

Two hearings were held on YIG's request for injunctive relief. The first hearing took place on January 19, 2011, the same day that YIG filed its petition in intervention and request for injunctive relief. Counsel for YIG appeared in person and Gregory Shamoun appeared personally by telephone. No witnesses were called, no evidence was admitted, and the attorneys were not sworn and did not testify. Shamoun explained to the trial court that he had not yet been served with YIG's petition or request for injunctive relief and so could not agree to a temporary restraining order enjoining Shamoun from filing suit against YIG.[12] The trial court granted the temporary restraining order and scheduled a temporary injunction hearing for the following week. *See* TEX. R.

---

[12] At the January 27, 2011 temporary injunction hearing and on appeal, YIG points to Shamoun's reluctance to agree to a temporary restraining order as evidence that Shamoun intended to file suit against YIG in another venue, and therefore that YIG would suffer irreparable harm if the injunction did not issue. However, the statements made by Shamoun's counsel at the hearing are not evidence because Shamoun was not sworn. *See Bay Fin. Sav. Bank, FSB v. Brown*, 142 S.W.3d 586, 590 (Tex. App.—Texarkana 2004, no pet.).

11

Civ. P. 680 ("Every restraining order shall include an order setting a certain date for hearing on the temporary or permanent injunction sought.").

The temporary injunction hearing took place on January 27, 2011. Counsel for Yarto, YIG, and Shamoun all appeared in person and offered arguments. Again, no witnesses were called and no sworn testimony was given by the attorneys. During the course of the hearing, six documents were accepted as exhibits by the trial court. YIG offered four documents: (1) Yarto's motion for remand filed in bankruptcy court; (2) a prior temporary anti-suit restraining order issued in a separate case on March 31, 2010, which enjoined YIG, YITC, Winkler, Williams, and others from filing suit against Yarto; (3) an order extending that temporary restraining order; and (4) a transcript of the January 19, 2011 telephonic hearing. Counsel for Shamoun introduced: (1) Shamoun's December 1, 2010 letter to Williams, Winkler, and others addressing Shamoun's status up until that point as counsel of record for YIG; and (2) a "Partial Release Agreement" executed by Yarto, dated December 6, 2010, in which Yarto "and his attorneys, heirs and assigns" agreed to release Shamoun from any and all claims related to the drafting of settlement documents, with the exception of Yarto's then-existing claim. Other than the "Partial Release Agreement," which was sworn to by Yarto, none of the six documents that were accepted by the trial court as exhibits contained sworn verifications. After the hearing, the trial court granted YIG's request for a temporary injunction barring Shamoun from filing suit against YIG in any other venue.

On appeal, Shamoun argues that the trial court erred by granting the injunction because YIG "failed to meet any evidentiary burden placed on them" by rule or case

12

law. [13] We agree. As noted, an applicant for injunction must establish its probable right to recovery and a probable injury by competent evidence adduced at a hearing. *Millwrights Local Union No. 2484*, 433 S.W.2d at 686. Here, no witnesses presented sworn testimony at either the January 11 or January 27 hearings. Moreover, the documents which were introduced by YIG as exhibits at the January 27 hearing were not authenticated by testimony, nor were they self-authenticating by virtue of being sworn to or verified.[14] The only "evidence" upon which the trial court based its ruling was YIG's sworn petition, the argument of counsel, and the six documents accepted as exhibits at the hearing. This was, in effect, no evidence. *See id.*; *Bay Fin. Sav. Bank, FSB*, 142 S.W.3d at 590; *see also Compass Bank*, 2011 Tex. App. LEXIS 1558, at *9–10.[15] Accordingly, the trial court abused its discretion by granting the anti-suit injunction. *See Millwrights Local Union No. 2484*, 433 S.W.2d at 686; *see also*

---

[13] At oral argument, YIG asserted that Shamoun waived this issue by failing to present it to the trial court. *See* TEX. R. APP. P. 33.1. However, Shamoun's complaint is essentially that there was legally insufficient evidence to support the trial court's order granting the injunction; and, "[i]n a nonjury case, a complaint regarding the legal or factual insufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." TEX. R. APP. P. 33.1(d). We therefore reject YIG's contention that the issue was waived.

[14] The general rule established in *Millwrights* is that, in the absence of an agreement between the parties, the proof required to support a temporary injunction may not be made by affidavit. *Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968). We note, however, that the Dallas Court of Appeals held in 2005 that "a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon." *Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) (emphasis in original). We do not herein approve or disapprove of *Pierce*, but instead merely note that, in any event, YIG did not introduce any affidavits or other verified documents as evidence at either injunction hearing.

[15] YIG notes that, in a 2005 memorandum opinion, this Court found evidence supporting a temporary injunction to be sufficient, even in the absence of live testimony, where court documents had been judicially noticed by the trial court. *See Tex. Mut. Ins. Co. v. Howell*, No. 13-05-026-CV, 2005 Tex. App. LEXIS 6950, at *22–23 (Tex. App.—Corpus Christi Aug. 25, 2005, pet. granted, judgm't vacated w.r.m.) (mem. op.). Here, however, the record reflects that the trial court never formally took judicial notice of the various documents produced at the January 27, 2011 hearing. Moreover, while this Court may take judicial notice of court documents on appeal, *see Office of Pub. Util. Counsel v. Pub. Util. Comm'n*, 878 S.W.2d 598, 600 (Tex. 1994), no such request was made by any party in this case. Accordingly, the documents cannot by themselves be considered competent evidence supporting the temporary injunction order.

*Operation Rescue-Nat'l v. Planned Parenthood of Houston & Se. Tex.*, 975 S.W.2d 546, 560 (Tex. 1998) ("[A] trial court has no discretion to grant injunctive relief . . . without supporting evidence.").

## B. Interlocutory Appeal of Venue Determination

In appellate cause number 13-11-00256-CV, Shamoun argues that the trial court erred by denying its motion to transfer venue because Yarto and YIG did not "independently establish venue as required under [Texas Civil Practice and Remedies Code section] 15.003(a)." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a) ("In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue.").

Citing the Texas Supreme Court's 2000 opinion in *American Home Products Corp. v. Clark*, YIG contends that we lack jurisdiction to consider Shamoun's appeal regarding venue because the statute allegedly authorizing an interlocutory appeal, section 15.003, applies only to orders "allowing or denying intervention or joinder." *See* 38 S.W.3d 92, 96 (Tex. 2000). We agree. The order on appeal does not purport to allow or deny YIG's intervention in the case; instead, it merely denies Shamoun's motion to transfer venue. We note that, in 2006, we observed that section 15.003 was amended post-*Clark* to clarify that "interlocutory appeals are available in all venue determinations involving multiple plaintiffs where joinder is challenged." *Sw. Bell Tel. Co. v. Superior Payphones, Ltd.*, 13-05-00661-CV, 2006 Tex. App. LEXIS 1502, at *7 (Tex. App.—Corpus Christi Feb. 23, 2006, pet. dism'd by agr.) (mem. op.). However, at no time did Shamoun challenge YIG's intervention or joinder in the case; instead, it only sought to transfer the case on the basis that YIG had not independently established

14

venue. A direct appeal may not be taken from an order merely ruling on a motion to transfer venue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) (West 2002) (providing generally that "[n]o interlocutory appeal shall lie from the determination [of venue questions]"). We conclude that we lack jurisdiction over Shamoun's interlocutory appeal in appellate cause number 13-11-00256-CV. We proceed to consider Shamoun's petition for writ of mandamus challenging the trial court's denial of its motion to transfer.

## C. Petition for Writ of Mandamus

In appellate cause number 13-11-00281-CV, Shamoun asks that we issue a writ of mandamus compelling the trial court to: (1) grant Shamoun's motion to transfer; and (2) grant, or at least rule upon, the agreed motion to transfer filed by Yarto. Shamoun specifically alleges that Yarto and YIG consented to the venue transfer by entering into the settlement agreement and, in the case of Yarto, by filing an agreed motion to transfer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b) (West Supp. 2010); *see also id.* § 15.063(3) (West 2002).

### 1. Standard of Review

Ordinarily, mandamus will issue only to correct a clear abuse of discretion for which the remedy by appeal is inadequate. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). The Texas Supreme Court has held that, "[g]enerally, an appellate remedy is adequate even though it involves delay and more expense than obtaining an extraordinary writ" and that "venue determinations as a rule are not reviewable by mandamus." *In re Masonite Corp.*, 997 S.W.2d 194, 197 (Tex. 1999); *In re Mendoza*, 83 S.W.3d 233, 236 (Tex. App.—Corpus Christi 2002, orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(c) (West 2002) ("A

15

court's ruling or decision to grant or deny a transfer under Subsection (b) [providing for transfer based on the non-mandatory venue provisions of subchapters A or C of chapter 15] is not grounds for appeal or mandamus and is not reversible error."); *In re Gibbs*, No. 13-08-00134-CV, 2008 Tex. App. LEXIS 2327, at *2 (Tex. App.—Corpus Christi Apr. 1, 2008, orig. proceeding) (mem. op.) (per curiam) ("We lack jurisdiction to issue writs of mandamus to supervise or correct incidental trial rulings when there is an adequate remedy by appeal . . . . Incidental rulings include venue determinations.").

However, an exception to this rule exists for the mandatory venue provisions contained in subchapter B of chapter 15 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 15.011–.020 (West Supp. 2010). Mandamus relief is available when a trial court erroneously denies enforcement of one of those provisions. *Id.* § 15.0642 (West 2002) ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter."). Moreover, when enforcement of a mandatory venue provision is sought, the relator need not show that it has an inadequate remedy by appeal. *In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d 653, 657 (Tex. 2005) (orig. proceeding) (citing *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding)).

### 2. Applicable Law

In general, the fixing of venue by contract is invalid. *In re Great Lakes Dredge & Dock Co.*, 251 S.W.3d 68, 76 (Tex. App.—Corpus Christi 2008, orig. proceeding) (citing *Fid. Union Life Ins. Co. v. Evans*, 477 S.W.2d 535, 537 (Tex. 1972)). An exception to that general rule appears in section 15.020 of the civil practice and remedies code, which states that contractual venue selection clauses may be enforceable in cases involving "major transactions." TEX. CIV. PRAC. & REM. CODE ANN. § 15.020. A "major

transaction" is "a transaction evidenced by a written agreement under which a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million." *Id.* § 15.020(a).[16] Section 15.020 is one of the mandatory venue provisions contained in chapter 15 of the civil practice and remedies code and is therefore enforceable by mandamus. *See id.* § 15.0642.

### 3.    Analysis

Shamoun argues that the settlement agreement executed on December 9, 2010, evidenced a "major transaction" as defined by the statute. We agree. The agreement was in writing and called for a party to the agreement, YITC, to make settlement payments totaling $1,777,500. The amounts of the payments were explicitly set forth in the agreement. *Cf. In re Togs Energy, Inc.*, No. 05-09-01018-CV, 2009 Tex. App.

---

[16] The definition of "major transaction" excludes transactions "entered into primarily for personal, family, or household purposes, or to settle a personal injury or wrongful death claim . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a) (West Supp. 2010). Moreover, the mandates of section 15.020 are not applicable where: (1) the agreement regarding venue was unconscionable at the time that it was made; (2) the agreement regarding venue is voidable under chapter 272 of the business and commerce code, relating to construction and repairs of improvements to real estate; or (3) venue is established under a statute other than title 2 of the civil practice and remedies code. *Id.* § 15.020(d).

It is undisputed that these caveats do not apply, with one exception: YIG contends that the agreement regarding venue was unconscionable at the time it was made. We disagree. All parties to the December 9, 2010 agreement were sophisticated business entities and were represented by competent counsel throughout the settlement negotiations. Though YIG complains that Shamoun was representing it at the time the settlement was reached, the December 1, 2010 letter sent by Shamoun to YIG clearly advised YIG that Shamoun's representation of YIG had in fact ceased. Moreover, an agreement to litigate in a forum in which the parties had already participated in mediation is not inherently unfair. We find that the venue selection clauses in the December 9, 2010 settlement agreement were not unconscionable at the time they were made. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348–49 (Tex. 2008) (orig. proceeding) ("Unconscionability is to be determined in light of a variety of factors, which aim to prevent oppression and unfair surprise; in general, a contract will be found unconscionable if it is grossly one-sided.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 208, cmt. a (1979) ("The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose, and effect. Relevant factors include weaknesses in the contracting process like those involved in more specific rules as to contractual capacity, fraud, and other invalidating causes; the policy also overlaps with rules which render particular bargains or terms unenforceable on grounds of public policy.")).

LEXIS 7949, at *2 (Tex. App.—Dallas Oct. 13, 2009, orig. proceeding) (mem. op.) (concluding that section 15.020 did not apply because agreement did not state the value of consideration). Yarto contends that section 15.020 does not apply to him because, although the agreement provided for payments in excess of $1 million to be made, Yarto "neither paid nor received $1 million from anyone." However, the statute does not require that a party to the potentially transferred lawsuit be obligated to pay or entitled to receive $1 million or more in consideration; instead, it merely requires that "a person" be obligated to pay or entitled to receive such consideration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(a). Moreover, though the statute does not define "person," the Texas Supreme Court has implied that transactions solely between corporate entities may be subject to section 15.020. *See In re Tex. Ass'n of Sch. Bds., Inc.*, 169 S.W.3d at 657–58 (holding that section 15.020 was not applicable to suit arising from insurance contract between corporate entities only because insurance coverage limits could not be included in the "aggregate stated value" of consideration).[17]

We must next determine whether the actions brought by Yarto and YIG, respectively, "ar[ose] from" the transaction evidenced by the December 9, 2010 agreement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(b).

Yarto's claims were first brought several months before the global settlement agreement was finalized. In a 2008 memorandum opinion, the Fourteenth Court of Appeals held that "[i]t would be erroneous to conclude that venue of a suit is fixed by agreement under section 15.020(b) when the claimed agreement was not executed until

---

[17] The statute is ambiguous in that it does not state whether one single party must be obligated to pay or entitled to receive more than $1 million, or if multiple obligations between various parties may be aggregated in order to reach the $1 million amount. In any event, assuming without deciding that the former construction of the statute is correct, the agreement at issue qualifies as a "major transaction" because one single party—YITC—was obligated to pay the entire $1,777,500 in consideration.

18

weeks after suit was filed." *In re Medical Carbon Research Institute, L.L.C.*, No. 14-08-00104-CV, 2008 Tex. App. LEXIS 2518, at *4 (Tex. App.—Houston [14th Dist.] Apr. 9, 2008, orig. proceeding) (mem. op.) (per curiam).  We agree with that court's reasoning. Venue is to be determined by examining the facts existing at the time the cause of action accrued.  TEX. CIV. PRAC. & REM. CODE ANN. § 15.006 (West 2002).  Yarto filed suit on April 28, 2010, more than seven months before the settlement agreement was executed on December 9, 2010.  The facts at the time of the accrual of Yarto's cause of action therefore did not include the existence of a settlement agreement containing venue selection provisions.  *See id.*  It follows that Yarto's claims did not "arise from" the transaction evidenced by that agreement, and section 15.020 does not apply to Yarto's claims.[18]

On the other hand, YIG's petition in intervention was filed on January 19, 2011, several weeks after the settlement agreement was executed.  Although YIG's petition raised many of the same allegations as those originally raised by Yarto, YIG's principal complaint against Shamoun is that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]."  Accordingly, YIG's claim "ar[ose] from" the settlement agreement.

---

[18] Shamoun argues that Yarto waived his ability to oppose transfer to Travis County by filing the December 29, 2010 agreed motion to transfer.  In support of this argument, Shamoun cites *Farris v. Ray*, 895 S.W.2d 351, 352 (Tex. 1995), in which the Texas Supreme Court found that an appellant waived his ability to appeal the trial court's transfer order because he previously joined in a rule 11 agreement consenting to the transfer.  We do not find this argument persuasive because, regardless of what position Yarto may have taken in the trial court, Shamoun still failed to show that a mandatory venue statute compelled transfer of Yarto's claims.  Therefore, Shamoun is not entitled to mandamus relief on those grounds.

But this observation does not end our inquiry, because the major transaction statute does not apply to *all* suits arising out of major transactions. Instead, subsections (b) and (c) of the statute restrict the operation of the statute to limited circumstances.

First, subsection (b) states that "[a]n action arising from a major transaction shall be brought in a county *if the party against whom the action is brought has agreed in writing that a suit arising from the transaction may be brought in that county*." *Id.* § 15.020(b) (emphasis added). Here, "the party against whom the action is brought"— i.e., Shamoun—did not agree in writing that "a suit arising from" a major transaction may be brought in Travis County. Shamoun was not a signatory or party to the settlement agreement, and so it cannot be said to have "agreed in writing" as to venue in that agreement, regardless of whether Shamoun is considered a third-party beneficiary to that agreement. And, although counsel for Shamoun signed the written "Agreed Motion to Transfer Venue" filed by Yarto, we have already held that Yarto's suit did not "arise from" a major transaction. *See id.* Subsection (b) therefore does not apply to YIG's claims.

Next, subsection (c) of the statute states that "[a]n action arising from a major transaction *may not* be brought in a county" if:

(1) the party bringing the action has agreed in writing that an action arising from the transaction may not be brought in that county, and the action may be brought in another county of this state or in another jurisdiction; or

(2) the party bringing the action has agreed in writing that an action arising from the transaction must be brought in another county of this state or in another jurisdiction, and the action may be brought in that other county, under this section or otherwise, or in that other jurisdiction.

20

*Id.* § 15.020(c) (emphasis added). Here, "the party bringing the action"—i.e., YIG—agreed in section 27 of the settlement agreement that "ANY AND ALL CLAIMS . . . RELATING TO THIS AGREEMENT . . . SHALL BE FILED AND MAINTAINED ONLY IN AN APPROPRIATE STATE OR FEDERAL COURT IN TRAVIS COUNTY, TEXAS." This is a written agreement that "an action arising from" the major transaction "must be brought" in Travis County. *See id.* § 15.020(c)(2). Accordingly, subsection (c)(2) of section 15.020 will compel the transfer of YIG's suit if and only if "the action *may be brought* in [Travis County], under this section or otherwise. . . ." *Id.* § 15.020(c)(2) (emphasis added).[19]

We cannot conclude that YIG's action "may be brought" in Travis County. The general venue statute states that all lawsuits shall be brought:

(1)   in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

(2)   in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person;

(3)   in the county of the defendant's principal office in this state, if the defendant is not a natural person;  or

(4)   if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

*Id.* § 15.002(a). As noted, the principal complaint against Shamoun contained in YIG's petition in intervention is that Shamoun "represent[ed] [YIG] in the course of the global settlement, and extracted terms and conditions of settlement for the benefit of [Shamoun] and to the detriment of [YIG]." However, YIG does not allege, and the

---

[19] YIG also agreed in section 15 of the settlement agreement that "none of the Yarto Parties [including YIG]. . . shall be permitted to bring a Shamoun Claim in any court not located in Travis County, Texas." This provision applies only to "Shamoun Claims" and does not state that any action *arising from the transaction* must not be brought in a particular county; therefore, subsection (c)(1) of section 15.020 does not apply. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.020(c)(1).

record does not reveal, that at least a "substantial part" of the actions taken by Shamoun as alleged by YIG occurred in Travis County. *See id.* § 15.002(a)(1).[20] Though the 2010 mediation, which forms the basis of Yarto's suit, occurred in Travis County, YIG's pleadings do not state implicitly or explicitly that any part of Shamoun's allegedly tortious acts or omissions took place at that mediation. Moreover, Travis County is not the location of Shamoun's principal place of business, nor is it the county of residence of either Shamoun's or YIG's principals. *See id.* § 15.002(a)(2)–(4). Travis County is therefore not a proper venue under the general venue statute, and so it cannot be said that YIG's action "may be brought" there. *See id.* § 15.020(c)(2). Section 15.020(c)(2) does not apply.

As noted, mandamus will issue to correct a venue ruling only if a mandatory venue provision located in subchapter B of chapter 15 of the civil practice and remedies code applies. *See id.* § 15.0642; *In re Masonite Corp.*, 997 S.W.2d at 197. The major transaction statute is the only mandatory venue provision invoked by Shamoun in its petition for writ of mandamus. Accordingly, we conclude that Shamoun is not entitled to a writ of mandamus compelling the trial court to transfer venue to Travis County.

However, Shamoun's petition also argued that the trial court abused its discretion, leaving Shamoun without an adequate appellate remedy, by refusing to rule on the December 29, 2010 "Agreed Motion to Transfer" filed by Yarto and signed by counsel for Shamoun. We agree. A trial court has a ministerial duty to consider and rule on motions properly filed and pending before the court within a reasonable time and

---

[20] We note that Shamoun's original motion to transfer, which was filed on April 29, 2010 in response to Yarto's petition, asserted only that Dallas County and Collin County were proper venues for Yarto's suit—despite the fact that Yarto's petition alleged in part that Shamoun "disclosed confidential communications" to adverse parties during a 2010 mediation in Travis County. YIG's petition in intervention, in comparison, does not contain that allegation.

22

mandamus may issue to compel the judge to act. *In re Layton*, 257 S.W.3d 794, 795 (Tex. App.—Amarillo 2008, orig. proceeding); *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269 (Tex. App.—San Antonio 1997, orig. proceeding). Here, though the "Agreed Motion to Transfer" was properly filed, the trial court's April 11, 2011 letter to Shamoun indicated unequivocally that it does not intend to rule on the motion.[21] *See supra* n.7. This constitutes a clear abuse of discretion. *Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (holding that trial court abused its discretion by "refusing to conduct a hearing and render decision" on a properly filed motion); *In re Mission Consol. Indep. Sch. Dist.*, 990 S.W.2d 459, 461 (Tex. App.—Corpus Christi 1999, orig. proceeding) ("[C]ourts of appeals have the power to compel the trial judge by mandamus to rule on pending motions."). We therefore grant Shamoun's petition for writ of mandamus in part.

### III. CONCLUSION

In appellate cause number 13-11-00087-CV, we reverse the trial court's judgment granting YIG's request for a temporary anti-suit injunction, and we remand the cause for further proceedings consistent with this opinion. We dismiss Shamoun's appeal in appellate cause number 13-11-00256-CV for want of jurisdiction. Finally, in appellate cause number 13-11-00281-C, we conditionally grant Shamoun's petition for writ of mandamus in part and direct the trial court to rule upon Yarto and Shamoun's "Agreed Motion to Transfer" within thirty days of the date of this opinion. The writ will

---

[21] Yarto contends that the trial court committed no abuse of discretion in failing to rule on the motion because Shamoun never set the motion for a hearing. However, the trial court's duty to rule on the motion was not contingent on Shamoun's calling the motion for a hearing; rather, the duty arose when Shamoun sent its April 7, 2011 letter to the trial court requesting that it rule on the motion. *See O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 97 (Tex. 1992) ("Mandamus will issue when there is a legal duty to perform a non-discretionary act, a demand for performance, and a refusal.").

23

issue only if the trial court fails to comply. The petition for writ of mandamus is in all other respects denied.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
19th day of January, 2012.